Jackson, J.,
delivered the opinion of the Court.
In the case of Colman vs.' Hall, 12 Mass. Rep. 570, this Court had occasion to consider some of the particulars, in which our law differs from the English common law, with regard to debts due from the estates of deceased persons. The case now before us presents some further points of difference. They arise naturally and necessarily from the manner in which such debts are recovered and paid in the two countries respectively. With us, all the creditors of a deceased insolvent debtor, with a few exceptions which do not affect the present question, are to be paid equally in proportion to their debts, without allowing any priority on account of the nature of the debt, or the time when it is demanded of the administrator. In England, debts by record, or by specialty, have a preference to debts by simple contractand of those in equal degree, that debt is preferred on which a suit is first brought, or a judgment first recovered against the administrator. During the lifetime of the debtor, the rule is nearly reversed in the *two [ * 384 ] countries. In England, if the debtor is subject to the bankrupt laws, all his creditors are paid equally in proportion to their debts; but with us, the creditor who first sues and attaches the goods or estate of his debtor acquires a priority. This Court has more than once had occasion to depart from the English law, in cases arising under our law of attachment by creditors; and it is equally necessary in many cases relating to a deceased debtor.
At the common law, a creditor cannot be compelled to refund the amount of a debt paid to him by the executor or administrator. The reason is, that the only ground on which the executor could demand the repayment would have been a good defence against the original claim, and would have excused him from paying the debt. If he proceeds with common care and diligence, he can never be compelled to pay more than has actually come to his hands; and if there is an eventual deficiency of assets, the loss will fall on those creditors who are negligent in demanding their debts, or on those whose debts are postponed by law. The administrator, therefore, proceeding regularly and carefully, can never have occa *310 sion to call on a creditor to refund. This is the general rule. The only exception, if there is any exception, seems to be in the case when the executor has recovered money from a stranger, and paid it out to creditors, and that money is afterwards recovered back from him, on a writ of error or other like process. In a case of that kind [1 P. Will. 355.], which was cited at the bar, the master of the rolls, in decreeing against the executor, left him “ at liberty to sue such creditors, as through mistake he had paid, to make them refund.”
With regard to legatees, the rule is different. If there is a deficiency of assets, all the legacies of the same class or description are to abate in proportion. If the executor has paid one legatee in full, and it afterwards appears that the assets were originally insufficient to pay all the debts and legacies, that legatee may be compelled to refund for the benefit of the cred- | * 385 ] itors, or of the other legatees ; and * it is now settled, though formerly doubted, that the executor alone may maintain such a suit. [ Vin. Abr. Q. d. pl. 35, Davis vs. Davis.—2 Eq. Ca. Abr. 554, S. C.] This case also settles another point which had been formerly doubted, that the executor may recover after a voluntary payment of such a legacy, as well as if he had paid after a judgment or decree for the legacy. This is not a departure from the principle, before mentioned, as to creditors; but it is the application of a different principle to a different case. The executor, when a legacy is demanded of him, may be compelled to pay it, if he has sufficient to pay all the other legacies, and all the debts then known to exist; and, as he may be compelled to pay, so, if he pays voluntarily, it shall have the same effect; and he is not required to subject himself to a suit, which would only produce unnecessary expense and delay. But debts which are then unknown may be afterwards demanded, and, if proved to be due, will be recovered against him, notwithstanding he has paid away all the assets to legatees. Here, then, is a case in which no degree of care or diligence can protect him from paying more than has actually come to his hands; and the law, therefore, allows him to recover back what he had so paid by mistake. The legatee was entitled to payment, according to all the facts known at the time when he received his legacy; but it appearing, from facts which have been since discovered, that he was not then justly entitled the legacy, he is com pelled to refund it. It is the common case of money paid b) mistake, which was not legally due, and which the party was under no obligation of honor or conscience to pay. 2 W. Black. 824.— 1 D. & E. 285.
The case at bar, in every point material to the question now *311 before us, resembles that between executor and legatee at the common law, and differs essentially from the case before stated of a creditor whose debt has been paid by an executor or administrator. In this case, the plaintiff might have been compelled to pay the debt. It was justly * due from the [ * 386 ] intestate; and the administrator had no defence, if a suit had been brought against him to recover it. It is true, a suit could not have been commenced until about two months after the time when he paid the debt; but if it was recoverable at law, it was but a prudent and faithful execution of his trust, to pay it as soon as he had money in his hands, in order to stop the interest.
The only mode in which the plaintiff could have defended a suit brought against him by the defendant, if brought after the 16th of June, 1815, would have been to represent the estate insolvent; and it was said in the argument that an administrator may always protect himself in that manner. But the law is not so. An administrator cannot represent the estate insolvent unless he has reason to believe it to be so; nor will the judge of probate allow such a representation, and award the commission of insolvency, unless he also, on examination, has reason to believe the fact. [4 Mass. Rep. 620, Hunt vs. Whitney, Adm.] The usual course is for the administrator to exhibit a list of debts which have come to his knowledge, or which he has reason to believe are due from the deceased ; and this statement is verified by his oath. If the amount of those debts exceeds the value of the estate, and if the judge has no reason to doubt the truth of the statement, he awards the commission.
To allow an estate to be represented insolvent when there is no sufficient reason to apprehend that it will prove so, might indeed protect the administrator; but it might, on the other hand, prove highly injurious to distant creditors, and would, in effect, alter or abrogate our statute provisions as to the settlement of estates, and particularly those which provide for the limitation of actions against executors and administrators. The statute allows the creditors four years, within which to bring their actions; but if the administrator may at his pleasure represent the estate insolvent, and obtain a commission, he may in * every case reduce [ * 387 ] this period to eighteen months, which is the limitation prescribed in cases of insolvency. Such a course would virtually abolish all distinction between estates which are insolvent and those which are not so; as every administrator would find it for his interest or convenience to represent the estate insolvent, by which he would at once diminish his responsibility, and abridge the period for which he is liable.
It is, then, clear that the plaintiff could not have protected him *312 self against the defendant’s demand by representing the estate insolvent; unless he had reason to believe the fact, and could satisfy the judge of probate that such would probably be the result. So far from having such a belief or opinion, it appears that the plaintiff proceeded in paying, not only the defendant, but other creditors of the deceased, on the supposition that the estate was solvent; and it was not until two years and a half afterwards that he represented it insolvent. It is not, indeed, expressly stated in the case that the plaintiff did make these payments under a mistaken opinion that the estate was solvent; and this circumstance was mentioned in the argument for the defendant. But the counsel for the plaintiff contended that the fact was so, and that it must be so understood from the statement; and he moved to discharge the role, if that point was denied. As the fact is so highly probable, to say the least, from what does appear in the case, this motion would undoubtedly have been granted, if the objection had been further insisted on, and had appeared to be well founded. We, therefore, consider it as a fact in the case, that the administrator, when he paid the debt to the defendant, did not suppose, or had no sufficient reason to believe, that the estate would prove to be insolvent.
If, indeed, the administrator had then known that the estate was insolvent, and had, nevertheless, chosen to pay the debt from respect to his father’s memory, or any other like reason, he could [ * 388 ] not now recover back the money. * “ Qui sciens solvit (soil, indebitum) donandi consilio id videtur fecisse.” But there is no reason to believe that the plaintiff, in this case, intended such a gift to the creditors of his father.
The proceedings in the Probate Court, and before the commissioners, were regular and proper. The administrator, having paid certain creditors of the estate under the mistake before mentioned, was justly substituted in their place in the allowance of claims by commissioners. This kind of subrogation is required by the plainest principles of justice and equity: it is not injurious to any other party; and it has been allowed in a case very analogous to the present, in '2 Ves. jun. 518, as well as in many analogous cases under the bankrupt laws in England.
•Upon the whole, we are all satisfied that the plaintiff is entitled to recover. Every case in which an executor, under like circumstances, has recovered against a legatee, is an authority directly in point; and this opinion is also confirmed by principles which are recognized in the case of Coleman vs. Hall, before cited. If the law were not so, an executor or administrator might be compelled, by process of law, to pay out to creditors all the assets in his hands; *313 and if, afterwards, within four years, a new debt should appear, of which he was before wholly ignorant, he would be compelled to pay that, also, or, at least, a ratable portion of it, out of his own funds. The utmost diligence and good faith could not protect him against such a loss. No man who is qualified for the trust would ever be willing to undertake it upon such terms.
The plaintiff will take judgment for the difference between the sum paid by him to the defendant, and the amount that would have been payable to him, on the decree of the judge of probate for the distribution among the creditors, whose debts were allowed by the commissioners, with interest on the amount of that difference, from the commencement of the action.

Defendant defaulted.