## John W. Doane

v.

## Union National Bank and W. C. D. Grannis.

*Insolvency—Assignment—Jurisdiction of County Court.*

1. The County Court does not, in the administration of the estates of insolvents, possess general equity powers.

2. A person said to be indebted to an insolvent estate is not deprived of his right to a trial by jury because the estate of his alleged creditor is being administered under the general assignment law in the County Court.

3. The County Court can not compel the purchaser at a sale of the assets of an insolvent estate to pay more than the amount of his bid, although it may be of opinion that it improvidently ordered the sale.

4. By analogy it would seem that a creditor of an insolvent estate who has received more than his proper dividend, can not be summarily ordered to repay the same, but should be proceeded against by suit.

[Opinion filed May 5, 1891.]

Appeal from the County Court of Cook County; the Hon. Elbert H. Gary, Judge, presiding.

Messrs. Haneoy & Merrick, for appellant.

It is a familiar principle of law, and the rule has been followed universally by our Supreme Court, that the rights of a purchaser, who is not a party to the record, under a decree which is not void, acquired while the decree is in force, will not be affected by a subsequent reversal of the decree for error.    Feaster v. Fleming, 56 Ill. 457.

A purchaser is not responsible for a misapplication of the purchase money.    Whitman v. Fisher, 74 Ill. 147; Mulford v. Beveridge, 78 Ill. 456.

It is the policy of the law to maintain judicial sales.    Allman et al. v. Taylor et al., 101 Ill. 185.

If a court has jurisdiction of the persons of the parties and of the subject-matter, its decree will be conclusive until reversed or annulled in some direct proceeding; and the title

to the property acquired at a sale under such a decree, by a stranger to the record, will be upheld, although the decree itself may afterward be reversed for manifest error. Allman et al. v. Taylor et al., *supra*.

Messrs. TRUMBULL, WILLITS, ROBBINS & TRUMBULL, for appellees.

If, as assumed by appellant's counsel, the position of appellant be that of a purchaser only under the order of sale, and not of a creditor, it is doubtful if the cases they cite would be applicable. Such a purchase is protected only to the extent to which the court has the power to enter the order. The County Court doubtless had the power to order the sale, but had it also the power to provide in the order that the claims against the estate should, at their face, be received in payment when the purchase price was less than the total of claims? This was, in effect, providing that the assets should be applied to the payment in full of part of the creditors to the exclusion of others. This is in direct violation of one provision of the statute, from which alone the County Court derives its jurisdiction.

But the attitude of appellant was not only that of a purchaser, but also that of a creditor of this estate, who has received an excessive dividend. In legal effect it is as if appellant, as purchaser under this order of sale, had paid the $97,344.41 in cash to the assignee for the assets, and this sum had been paid back to him as a creditor of the estate as dividends upon the claims purchased by him. It was not as a purchaser, but as a creditor, representing three-fourths in number and amount of all the indebtedness of the estate, that appellant appeared before the County Court and induced that court to enter the order of sale, by consenting thereto.

No argument is necessary to show that there exists somewhere a remedy to recover back from a creditor receiving by mistake more than his *pro rata* dividend, the excess so received. Before our statute a court of equity had undoubted jurisdiction of assignments, and to enforce at the suit of any creditor thereunder a proper distribution by the

Doane v. Union National Bank.

assignee, and compel a creditor receiving an excessive dividend to refund the excess to the end that proper distribution might be made.   That such remedy is not destroyed by a statute which expressly secures equality among creditors, is clear. The only real question here is, where, under the circumstances of this case, such remedy must be sought—in the court of equity or in the County Court.

The statute does not create assignments for creditors; they existed before its passage.   Its sole object is their regulation and control.   The only new right created by it is that of equality among creditors, which it secures by abolishing preferences.   The statute creates an exclusive jurisdiction in the County Court, or, more properly, transfers to, and makes exclusive in, the County Court a jurisdiction previously existing in the court of chancery.   By that statute, "full authority and jurisdiction is   *   *   *   conferred upon the county courts   *   *   *   to execute and carry out the provisions of this act."   The most important of these is that securing equality among creditors, which was violated by the order of October 12, 1888.   To sustain appellant on this point, it is necessary to hold that if, by mistake, one creditor is paid more than his proper dividend, the County Court is powerless to order the creditor (a party to the proceedings) to return the excess of dividend, and the only remedy is a suit in some other court.

On the hearing in the lower court this position was maintained on the ground that the jurisdiction of the County Court existed only while the fund was in the hands of the assignee, and after it passed from him the County Court lost jurisdiction over it.   In direct contradiction to this position is the case of Field v. Ridgely, 116 Ill. 424.

In that case the County Court ordered the assignee to pay some of the creditors in full, by reason of a lien which they had upon the estate prior to the assignment, and after he had done this and the fund had passed from his possession, other creditors filed a bill in chancery denying the validity of the lien and seeking to recover the fund.   But the Supreme Court held that their remedy was an application to the County

Court to set aside its order, and having failed to do this the order was conclusive upon them. These appellees have strictly followed the line of practice indicated by this case, and under that decision it is difficult to conceive what course is open to them, except the one they have taken.

Counsel for appellant also seem to deny the power of the County Court to modify or reverse an order after the term at which the order was entered. This is the rule as to final judgments and decrees, but it has no application to interlocutory orders. Ball v. Leonard, 24 Ill. 148. The order for October 12, 1888, was of that character, as are all orders in assignment cases except the one finally disposing of the case. That such orders are subject to be modified or set aside, see Field v. Ridgely, *supra;* Hanford Oil Co. v. First National Bank, 126 Ill. 584.

In this last case the court held that notwithstanding an order unqualifiedly recognizing the lien, the lien creditor " was required to know, that while the court retained jurisdiction, the order was subject to modification or to be set aside, and, upon proper application, it was the duty of the court to set it aside or modify it, if necessary to protect the rights of parties in interest, or to distribute the estate conformably to law."

The rule contended for by appellant would be productive of embarrassment in the administration of insolvent estates. Orders therein are necessarily, sometimes, entered hastily, and before all the creditors are known or can be notified. Great injury must result, if an order which happens to be entered on the last day of a term, is not subject to modification afterward.

In the case at bar the order of sale was, doubtless, entered inadvertently, and in the mistaken belief that all claims had been secured. Should not the County Court be given the power to correct its own mistakes?

WATERMAN, J. On August 31, 1888, Samuel Bliss made a voluntary assignment to George M. Bogue, for the benefit of creditors.

In October thereafter, by an arrangement honestly believed to be advantageous to all parties, and entered into with the full knowledge of the court and in perfect good faith, the assignee having ascertained that the claims would amount to some $97,000, John W. Doane, the appellant, proposed to furnish the assignee with money enough to pay the claims and to buy all the assets.

The assignee reported to the court that the claims amounted to $97,344.31, and that Edward J. Holden had proposed to buy the same for that sum, paying for them by a surrender of claims to that amount; and thereupon on October 12, 1888, the court ordered that such sale be made unless objection should be made by October 15th. No objection was made, and November 5th the assignee reported that he had made such sale, claims to the amount of $99,242.92 having been assigned to him by said Holden, the amount previously reported having been increased by accumulated interest and the addition of a few small claims for labor. The assignee also reported that Holden had agreed to pay any claims that might arise out of the Rockford business done by said Bliss; thereupon the assignee's report was approved and the sale confirmed.

Appellant, it appears, did, through Holden, place money in the hands of the assignee to the amount of more than the claims as then stated, which money the assignee used in paying claims, taking an assignment of them to Holden; the creditors voluntarily threw off some $6,000 from their claims as a donation to Mrs. Bliss, which money was given to her.

The assignee, after paying all the claims, together with the costs and expenses of the assignment, had of the money placed in his hands, as aforesaid, some $8,000, which he returned to Holden. Appellant's name was not mentioned in any of the proceedings, but it was well known that it was he who furnished the money. After all this was done, the Union National Bank filed in the County Court a claim against said Bliss, it being based upon his liability upon an appeal bond which he had signed.

January 10, 1890, the bank filed its petition, setting up the

presentation to the assignee of its claim on November 30, 1888, the sale of the assets, and asking that Holden and Doane be required to answer the petition, and that the order of sale of October 12, 1888, be amended and modified by striking therefrom the words, "In the surrender and transfer at their face value," and inserting in lieu thereof the words, "In the surrender and transfer at the same percentage on the dollar as $97,344.41 shall be to all the claims proven against said estate within the time fixed by the statute;" that Holden and Doane be ordered to repay to the assignee for the benefit of the petitioner a sum equal to such proportion of their claim as the sum of $97,344.41 shall be to the total amount of all claims proven against the estate.

Holden and Doane being cited in, appeared and answered the petition, denying the jurisdiction of the court to require either of them to do anything in the premises. Doane also insisted that he had nothing to do with the matter, except to furnish Holden with the money with which to purchase certain assets of the insolvent. From the testimony taken, the foregoing may be said to fairly appear.

The court directed that the order of sale be amended as prayed, and that Doane pay to the assignee for the use of the petitioner, $1,371.01 within ten days, the question of the petitioner's right to recover from the assignee being reserved.

It may be conceded, as is argued by appellee, that the order of the County Court directing the sale of the assets for $97,344.41, to be paid in "the surrender and transfer at their face value" of claims to that amount, was in violation of the statute, but it does not follow that, having authorized the assignee to make a sale upon certain terms, and the sale having been so made and confirmed by the court, it can now change the terms of sale.

It takes two to make a bargain. Mr. Holden or Mr. Doane made a certain offer that was accepted, the trade was made, the goods delivered, and the consideration paid as agreed. It may be the case that if the assets sold were intact and could be handed back, the court finding that it has authorized and confirmed a sale upon terms that ought not to have been

agreed to might direct Holden and Doane to return the assets and take back the surrendered claims. But can the court simply say to them, you are held to your bargain to take the assets upon the terms agreed upon, and also to pay a sum which the court now finds it ought then to have made you agree to pay?

Let us bear in mind that this is not a case of fraudulent dealing or representation, but an instance wherein the seller has not asked as much as he ought and would have done, had he known then what he knows now.

It is said that the attitude of appellant is that of a creditor who has received an excessive dividend. He might be so regarded if the offer to purchase the assets had been to pay cash for them, but it is manifest from all of the order of sale that is shown in this record, that it was not a sale for cash but a sale for $97,344.41, to be paid by the surrender at face value of claims to that amount.

If any one must respond to the petition for the mistake in making such a sale it is the assignee and not the purchaser, who has fully carried out the bargain, he, with the consent of the court, made.

The question of the jurisdiction of the court to make the order upon appellant to pay the sum of $1,371.01 to the assignee, is an important one. He is ordered to pay this within ten days; if he fail he may be attached and imprisoned for contempt. His name does not appear in any of the proceedings for the sale of these assets or the surrender of these claims. It is only by evidence, extrinsic the record, that the conclusion is reached that he was really the purchaser at this sale.

If, under these circumstances, this order may be made, then any member of the community may at any time be required to pay into the County Court whatever sum it shall appear the assignee of some insolvent has either paid to some creditor as a dividend, or ought to have received from some purchaser on a sale of assets. The fact that the name of the person against whom the order is made, nowhere appears in the proceedings, is of no consequence, if the court, upon evi-

dence heard, becomes convinced that he was the real purchaser or creditor.   In a matter in which a party has never appeared he is cited into court and summarily ordered to pay a large sum of money.   By analogy to the cases in which an executor pays legacies, it afterward appearing that the assets thus distributed are needed to pay creditors, or pays certain creditors in full, and the estate thereafter proves to be insolvent, it would seem that if, as is contended by appellees, Doane is a creditor who has received full payment when not entitled thereto, the sum it is claimed he ought to repay can only be recovered by suit regularly and properly instituted against him.   Walker v. Hill, 17 Mass. 379 ; Williams on Executors, 1036, note; p. 989, note 8; 1836, note r, 2 ; Lawson, Adm'r, v. Hambrough, 10 B. Monroe, 147; Rogers v. Weaver, 5 Ohio, 536; Richards v. Nightingale, 9 Allen, 149; Schouler on Executors and Administrators, Sec. 491.

The County Court does not, in the administration of the estates of insolvents, possess general equity powers.   Preston v. Spaulding, 120 Ill. 208.

While the County Court has full power to pass upon all legal and equitable claims against the insolvent estate (Field v. Ridgely, 116 Ill. 424), it does not follow that as to persons said to be indebted to the estate, it has the power to cite them into court and summarily order them to pay.

A person said to be indebted to an insolvent estate, is not deprived of his right to a trial by jury because the estate of his alleged creditor is being administered under the general assignment law in the County Court.

We are of the opinion that the order of the County Court made upon the petition of appellees, March 5, 1890, was unauthorized, and it is reversed and the proceeding remanded to that court, with directions to dismiss the petition as to said John W. Doane.

*Reversed and remanded with directions.*

MORAN, P. J.   I do not concur in the opinion reached in this case.