JOHN V. FARWELL *et al.*

*v.*

L. E. CRANDALL.

*Filed at Mt. Vernon January 25, 1887.*

INSOLVENT DEBTORS—*assignment for the benefit of creditors—jurisdiction of the county court in the administration of an insolvent estate—how far exclusive in its character.* An insolvent debtor made a voluntary assignment for the benefit of creditors. The assignee took possession of the effects and estate of the debtor, and entered upon the duties of the trust. Subsequently, one of the creditors of the assignor recovered a judgment against him, for a certain sum, in a court of record other than the county

court. Execution issued upon this judgment having been returned *nulla bona*, process of garnishment was sued out by the plaintiff, which was served upon the assignee, commanding him to appear and answer as the garnishee of the judgment debtor. Thereupon, the assignee presented to the county court a petition, setting up the foregoing facts, and stating that no property in which the debtor could be interested had come into his hands, except by virtue of the assignment mentioned, and asking the county court to restrain the further prosecution of the garnishment proceeding. The plaintiff in the judgment answered, admitting the facts as alleged, but charging, by way of defence, that the assignment was made in fraud of creditors. Upon this presentation of the matter, the county court ordered that any further prosecution of the garnishment proceeding be restrained and enjoined, not, however, passing upon the validity of the assignment, but reserving to the plaintiff in the judgment the right to contest that question, on proper proceedings, in the county court, and also reserving to the plaintiff all rights, if any, accruing to him by reason of having commenced the garnishment proceeding, to be adjusted also in that court. It was *held,* this disposition of the matters presented was correct. The county court having already full power and jurisdiction over the entire subject of the assignment, and the assets being *in custodia legis,* that was the proper forum in which to raise and settle the question of the validity of the assignment.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. TENNEY, BASHFORD & TENNEY, for the appellants:

An assignment, valid on its face, but fraudulent in fact, is not void. It is voidable only as to creditors who attack it. As to those who ratify it, and claim the benefit of the trust, it is valid. *Rappleye* v. *International Bank,* 93 Ill. 396; *Burrows* v. *Alter,* 7 Mo. 424; *Richards* v. *White,* 7 Minn. 345; *Scott* v. *Edes,* 3 id. 377; *Frierson* v. *Branch,* 30 Ark. 453.

The validity of the assignment may be contested by any creditor, in a collateral action. If the assignment is fraudulent, the property transferred may be attached, or the funds, etc., in the hands of the assignee, may be garnisheed. *Howard* v. *Edgar,* 3 Scam. 417; *Finley* v. *Dickerson,* 29 Ill. 9; *National Bank* v. *Lanahan,* 60 Md. 477; *Edwards* v. *Mitchells* 1 Gray, 239; *Moss* v. *Humphrey,* 4 G. Greene, 000; *Burrow,* v. *Lehndorf,* 8 La. 96; *Ruble* v. *McDonald,* 18 Iowa, 493.

In the following cases, under a similar statute, the assignment has been set aside as fraudulent, in a collateral action, by garnishment of the assignee, or otherwise: *Farrington* v. *Sexton,* 43 Mich. 454; *Keep* v. *Sanderson,* 12 Wis. 352; *Goodrich* v. *Downs,* 6 Hill, 438; *Wilson* v. *Robinson,* 21 N. Y. 587; *McClurg* v. *Lecky,* 3 Pa. 91; *Berry* v. *Cutts,* 42 Me. 445; *Holt* v. *Bancroft,* 30 Ala. 193; *Nightingale* v. *Harris,* 6 R. I. 321.    See, also, Burrill on Assignments, 276, 287.

It is not within the province of the county court to decide whether the assignment is fraudulent, or not.    That is a question of fact, to be determined by the jury.    *Wilson* v. *Pearson,* 20 Ill. 81; *Nimmo* v. *Kuykendall,* 85 id. 476; *Hays* v. *Bernard,* 38 id. 297.

Messrs. FRANK J. SMITH & HELMER, for the appellee:

The county court, when exercising the powers conferred on it by the act of May 22, 1877, is in effect an insolvency court, and the assignee's relation to the property is that of a receiver, or of an assignee in bankruptcy; and adverse claims against the property or estate in his hands, must be presented through or with the consent of the county court.

Most of the cases cited are not applicable to a case like the present.    The act referred to has worked a radical change of the law in this State.

When the jurisdiction of the county court has once attached, no other court has any right to interfere.    *Hanchett* v. *Waterbury,* 115 Ill. 220; *Cook* v. *Whipple,* 9 B. R. 155; *Field* v. *Ridgely,* 116 Ill. 424; *Preston* v. *Spaulding,* 18 Bradw. 341.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

A. H. Norton made a voluntary assignment to J. Hughes Fisher, for the benefit of creditors.    Fisher having refused to act, the county court of Cook county, by an order duly entered of record, on the 22d day of January, 1886, appointed

L. E. Crandall assignee, in the place of Fisher. Upon such appointment, Crandall, on the same day, gave bond, took possession of the effects and estate of Norton, and entered upon the duties and trust imposed by the assignment. On the 3d day of February, 1886, John V. Farwell & Co. recovered a judgment in the Superior Court of Cook county, against Norton, for $4361.34, upon which an execution was issued, and returned by the sheriff of the county, *nulla bona.* The plaintiffs in the judgment thereupon caused a summons to be sued out of said Superior Court against the assignee, commanding him to appear therein, and answer, as garnishee of Norton. Upon being served, the assignee presented to the county court a petition, setting forth the foregoing facts, and averring that the only property held or controlled by him, in which the said Norton was in anywise interested, was held by virtue of the assignment in question, and prayed that the plaintiffs in the garnishee proceeding might be restrained from further prosecuting the same. The plaintiffs in the judgment answered the petition, admitting the facts therein stated, but charged, by way of defence, that the assignment was made to hinder, delay and defraud creditors. The county court, upon this presentation of the matter, made and entered of record the following order:

"It is hereby ordered by the court, that said plaintiffs, John V. Farwell *et al.,* in the garnishment cause above named, their agents and attorneys, and each and every one of them, be and they are hereby restrained and enjoined from further prosecuting said garnishment cause against said L. E. Crandall, assignee, as aforesaid, and against any of the funds in his possession, as aforesaid, the court, however, not passing herein upon the validity of said assignment. It is further ordered by the court, that said plaintiffs in said garnishment cause above named, shall be protected in this court, and allowed to set up herein, on proper proceedings, their claims against said assignment that are or can be set up, in any way,

in said garnishment proceedings, and that all rights, if any, accruing to them by reason of commencing said garnishment suit, be and the same are hereby preserved to them, to be prosecuted and recovered in this court by proper proceedings or petition."

On the appeal of defendants in the petition, this order has been approved and affirmed, respectively, by the circuit court of Cook county, and the Appellate Court for the First District, and by their further appeal the case is brought to this court.

The appellants concede that the right and jurisdiction of the county court, under a valid assignment, to enforce the trust and distribute the fund lawfully in the hands of the assignee, is, under our statute, exclusive; but they insist that the validity of the assignment itself, though regular on its face, may be attacked in another tribunal, on the ground of fraud. To permit suits to be prosecuted in other courts for such a purpose, would necessarily interrupt and greatly embarrass the collection, and distribution of the insolvent's estate among his creditors, and in many cases would practically defeat the objects of our Voluntary Assignment act, one of which is, doubtless, to enable the insolvent debtor to make a just and equitable division of his estate among all his creditors, in such a way as to repel, as far as possible, any suspicion of its entire fairness. The most effectual way of accomplishing this object, is, doubtless, the one which was adopted, viz., to require his effects to be administered by some disinterested person, under the constant guidance and direction of an enlightened and impartial tribunal, open at all times, and to all persons alike, having or claiming to have any interest in or claim upon the insolvent's estate, and desiring to be heard upon the same. Under the scheme adopted, the individual interest of each creditor or claimant will naturally lead him to keep a watch over all the others, and to see that no claim is allowed against the insolvent's estate that is fictitious or unjust. By reason of all the claims and parties in interest being in

and before the same court, this may easily be done, and with comparatively but little expense. The statute, it will be remembered, expressly authorizes the creditors to contest the claims of one another, whenever, in their judgment, they think proper to do so. Now, it is quite clear, the objects of the act in these respects could not be attained if any and everybody having a claim, real or pretended, against the insolvent's estate, were permitted to assert them in other courts, by replevying or attaching the assets in the assignee's hands. If this could be done, a dozen suits, in as many different courts, might all be going on at one time. In such case, could he give them all his personal attention? If not, how would he know which to attend to and which to neglect, if all should equally demand his presence? And if, as in the present case, the creditors were not before these courts, as they probably would not be, who would protect them?

We might go on, almost without limit, suggesting embarrassments and difficulties that would result from permitting other courts to interfere after the jurisdiction of the county court has once attached; but we forbear, with the additional remark that the most serious objection to the view in question is, that it is clear the legislature intended that the estates of insolvent debtors, when assigned for the benefit of creditors, should be administered by the county courts, and not other tribunals. As already remarked, this is conceded as a general proposition, but it is claimed the rule does not apply where the assignment is fraudulent. The trouble with this theory is, that it involves an interference with the administration of the insolvent's effects by the county court, before that fact has been judicially ascertained. It is an error to suppose that the jurisdiction of the county court depends upon the validity of the deed of assignment. For the purposes of jurisdiction, it is sufficient that there has been an assignment, in fact, for the benefit of creditors. This is conclusively shown by the well recognized doctrine that a fraudulent assignment

is voidable at the election of the creditors, only; hence, if the latter do not object, the court may nevertheless go on and administer the assets. This, of course, the court could not do if its jurisdiction depended upon the absence of fraud in making the assignment. In such case, any creditor not desiring to submit to the fraudulent instrument is not bound to do so, and he has the right, at least as to himself, to have it set aside; but he is not, for reasons already stated, permitted to go into some other tribunal to have this done. The county court having already full power and jurisdiction over the entire subject of the assignment, and the assets being *in custodia legis*, that is the proper forum in which to raise and settle the question. If the decision of that court, when made, is not satisfactory, the right of appeal lies as in other cases. There can be no possible hardship in this.

The view here taken was first indicated in the case of *Freydendall* v. *Baldwin*, 103 Ill. 330. In *Hanchett* v. *Waterbury*, 115 Ill. 220, it was sustained, by a majority of the court, to the full extent here stated, after a most elaborate argument and thorough consideration of the subject. This last case was followed in *Field et al.* v. *Ridgely et al.* 116 Ill. 424.

The various provisions of our Assignment act are elaborately considered in *Hanchett* v. *Waterbury, supra*, yet the case is not even so much as referred to by counsel for appellant, notwithstanding it is conclusive of the question here raised. This is probably to be accounted for on the ground that the brief of appellant's counsel was prepared before the 115th volume of our Reports, in which it appears, was issued.

The case of *Zimmerman* v. *Willard et al.* 114 Ill. 364, is pressed upon our attention as expressive of a contrary view. Assuming this to be so, it could only be regarded as overruled by the subsequent cases. We do not think, however, there is any necessary conflict between that case and the view we have taken in this, or between it and the later cases just

cited. In that case, Zimmerman had sued an attachment out of the circuit court of Jackson county, against Willard, and summoned certain debtors of the latter as garnishees. Previous to this, Willard had made a general assignment in Union county, his former residence, for the benefit of his creditors. His assignees appeared in the attachment suit in Jackson county, and instead of questioning the jurisdiction of that court, simply submitted, by way of interpleader, their right, under the assignment, to the fund sought to be reached by garnishment, and upon the issues and proofs it was held that they were entitled to it, and this court sustained the judgment. It was also held, however, that the court below ruled improperly in holding a plea to the interpleader bad, which alleged that the deed of assignment was executed by Willard of his fraud and covin, with intent to delay, hinder and defraud his creditors; but inasmuch as there was already an issue under which that fact might have been proved, it was held, the plaintiff could not have been injured by the erroneous ruling. As no question respecting the right and jurisdiction of the Jackson county circuit court to adjudicate upon the rights of the parties was raised or determined in that case, either in the trial court or in this court, it is not perceived how the decision in that case can be regarded as in conflict with the view taken in this. Although the question is not before us, we have no doubt that, inasmuch as no plea was interposed to the jurisdiction of the Jackson circuit court, it had, in virtue of its general powers and jurisdiction in matters of attachment, a perfect right to go on and hear and determine the case as it did. This, so far as we can perceive, is in perfect harmony with the construction we have placed on the statute.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

I can not concur with the majority of the court in the views, entertained by them in regard to the Voluntary Assignment act, as embodied in this opinion and in several other opinions of a similar character. The constitution of this State (art. 6, sec. 12) provides, that "the circuit courts shall have original jurisdiction of all cases in law and equity." The legislature can not deprive them of such original jurisdiction by any act that it may pass. Section 18 of article 6 of the constitution, after specifying certain matters, in which county courts shall have original jurisdiction, provides that they shall have "such other jurisdiction as may be provided for by general law."

Under section 18, the legislature might, by a general law, confer upon county courts jurisdiction in all cases in law and equity. But even if this be admitted, the legislature could only confer upon county courts a jurisdiction in such cases, which should be *concurrent* with that of the circuit courts. It could not give them *exclusive* jurisdiction in law and equity cases. Any act, that should attempt to do so, would violate section 12 of article 6, as above quoted.

This point was expressly decided by this court in *Myers* v. *The People*, 67 Ill. 503, where it is said: "The last clause of section 18 of article 6, above quoted, is broad enough to warrant the legislature in conferring upon the county courts of the State concurrent jurisdiction with the circuit courts; but that clause must be construed in connection with other provisions of the same instrument. * * * The legislature, therefore, has no power to abridge the original jurisdiction of the circuit court. This it has attempted to do * * * by providing that county courts shall have *exclusive* jurisdiction in all criminal cases etc."

The 14th section of the "Act concerning voluntary assignments" etc. provides, that "full authority and jurisdiction is

hereby conferred upon county courts, and the judges thereof, to execute and carry out the provisions of this act," etc. By the decisions here dissented from, the language of this 14th section is, in effect, construed to mean, that whatever powers of a court of chancery or of a court of common law are necessary to be exercised in executing and carrying out the Voluntary Assignment act, shall be *exclusively* vested in county courts. If the act in question involves and necessitates any such construction as this, it is unconstitutional.

The legislature has never passed any *general* law, conferring upon county courts even *concurrent* jurisdiction with circuit courts in all common law and equity matters pertaining to voluntary assignments and the property conveyed by them, unless the act in question is such general law. If the act confers any such jurisdiction, it is only by implication. If the legislature intended, by the passage of the act, to proceed under the last clause of section 18 of article 6 of the constitution and to confer upon county courts any such *concurrent* jurisdiction, as is there contemplated, it is natural to suppose, that they would have conferred it in *express* terms and not by such general language, as is used in section 14, above quoted.

Jurisdiction is *exclusive* as well when it is limited to a particular class of subjects, or a particular kind of property, as when it is limited to a particular amount. If the legislature should pass an act, giving to county courts exclusive jurisdiction in all law and equity cases, where the amount involved does not exceed $1000, it would be conceded at once, that such act was unconstitutional, as depriving circuit courts of a part of the jurisdiction, conferred upon them by the organic law. What difference is there between *such* an act, and an act, which is construed to mean, that circuit courts shall have no jurisdiction whatever in any case at law or in equity, which has reference to a voluntary assignment, or, in any way, concerns any property, either real or personal, embraced in a voluntary assignment?

Under the construction, given to this act, the county courts are clothed with greater chancery powers than are ever exercised by any ordinary court of equity. In order to get an injunction against a man, it has generally been considered necessary to file a bill and make him a party. An injunction is usually issued only against one, who is a party to a pending proceeding. But, in *Hanchett* v. *Waterbury,* where a creditor placed a replevin writ, issued by the circuit court, in the hands of the sheriff, for the purpose of replevying his own property, that happened to get into the hands of· an assignee under a voluntary assignment, the county court is permitted, upon the application of the assignee, to make an order enjoining the sheriff from levying the writ, although the sheriff was not a party to any proceeding pending before the county court.

In this case, the county court makes a. decree, enjoining certain creditors, who are outside parties and not before it as parties to any proceeding, from prosecuting a garnishee proceeding in the Superior Court of Cook county.

Fraud is a ground of equitable jurisdiction and circuit courts have equity jurisdiction; yet, under this decision, a circuit court can not entertain a bill to set aside an assignment for fraud; its jurisdiction upon that subject is taken away and vested exclusively in the county court, although even under the Assignment act, the county court has to do only with assignments "for the benefit of creditors," and a fraudulent assignment is not for the benefit of creditors.

The enforcement of trusts is a ground of equitable jurisdiction, such as circuit courts are accustomed to exercise; yet, under the construction given to this act, if the assignor, holding the naked legal title to a piece of land, of which a third person is the equitable owner, deeds it to his assignee in a voluntary assignment, such third person can not file a bill in the circuit court to enforce the trust and get the legal title back into himself, but he must go into the county court.

In case an assignor, having any sort of title to a piece of real estate, should include it in his deed of assignment, a third person, claiming the better legal title, could not, under the construction thus claimed, commence an action of eject-ment in the circuit court, but must begin it in the county court.

In my opinion, the legislature never intended to vest the county courts of this State with any such vast and extended jurisdiction, exclusive in its character, as is here indicated.

It is said, that the construction of the act, adopted by the majority of the court, is justified by the rule, that, in cases of concurrent jurisdiction, the court, which first obtains juris-diction, will have precedence.

If the county court can be said to obtain jurisdiction first in the instances above recited, it is so obtained, when the inventory and valuation, specified in the third section of the act, are filed. The object of the assignment is to distribute the assignor's assets *pro rata* among his creditors. A court can not have jurisdiction over a question, until the question arises. The filing of an inventory and valuation of assets with a view to their future distribution can not give juris-diction in advance to the county court over questions of title and ownership, which have not yet arisen.

"Concurrent jurisdiction is that which is possessed over the same parties or subject matter at the same time by two or more separate tribunals." Suppose that a man's personal property, which happens to be in the possession of an assignor, is turned over by fraud or mistake to the assignee named in the assignment, and he commences a replevin suit in the circuit court to recover it from the assignee. The question involved is the ownership of the property. That question first arises, so far as the courts are concerned, when the re-plevin suit is begun. The circuit court gets jurisdiction over that question, which is the subject matter of the suit, before

the county court gets any jurisdiction over it. The county court has no jurisdiction over the plaintiff in the suit, nor over the sheriff, holding the writ. It is a matter for the circuit court to decide.

It may be said, however, that the circuit court does not get jurisdiction of the subject matter by reason of the fact that the replevin suit or other proceeding to test the ownership of the property is brought in that court. On the contrary, it may be claimed that the county court obtains jurisdiction first because it has possession of the property under and by virtue of the assignment. If this claim is correct, then the circuit and county courts can not be said to have concurrent jurisdiction, unless it is possible for the circuit court also to get possession of the property under and by virtue of the assignment. But the Assignment act confers no power whatever upon the circuit court to take any action in matters of voluntary assignments; that court has no control over the property assigned, and nothing to do with administering or distributing the assigned effects. Indeed, the ground upon which the majority base their construction of the act is, that it confers exclusive jurisdiction upon the county court. It can not be correct to say that the jurisdiction is both exclusive and concurrent.

I think the proper views of this Assignment act are expressed on pages 220 and 221 of the 115th volume of the Illinois Reports, in the abstract of points made by counsel for appellant in the case of *Hanchett* v. *Waterbury,* and which precede the opinion in that case.

Mr. JUSTICE SHELDON, also dissenting.