Warren v. Howe.

*Appeal dismissed.*

44  157
62  73

Everett M. Warren, Impleaded, etc,

v.

Jerome Howe et al.

B. F. Jacobs, Impleaded, etc.,

v.

Same.

S. A. Kean, Impleaded, etc.

v.

Same.

*Assignments—Jurisdiction of County Court—Effect of Order of Discontinuance—Remedy of Aggrieved Creditors—Pleading—Allegations of Fraud.*

1.   Since the enactment of the assignment statute, all general assignments for the benefit of creditors are controlled by its provisions; and to the County Court is committed an exclusive jurisdiction over the management and distribution of the assigned estate.

2.   All voluntary assignments for the benefit of creditors stand upon the same footing. and the language used in a particular deed of assignment neither adds to, nor takes from its effect.

3.   Upon an order of discontinuance entered by the County Court in accordance with the statute, the title of the assignee is divested and the trust created by the assignment brought to an end.

4.   The proper remedy of parties opposed to an order of discontinuance in such case, is to appear and oppose the same in the County Court, and if aggrieved by the action of that court, to except, and to appeal.

5.   The allegations of the bill setting up a combination between the assignor, the assignee and others, with intent to defraud the complainants, *held*, to be insufficient as charges of fraud in the case presented.

### [Opinion filed March 19, 1892.]

APPEALS from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding. ·

These cases are separate appeals taken from an order of the Superior Court appointing a receiver in the case of Howe et al. v. Kean et al., in that court. The order for a receiver was made upon the original bill filed by Howe et al., a bill of interpleader by John A. Brown, separate verified answers by Warren and Jacobs, a demurrer by Kean and an affidavit by Jacobs.

Briefly stated it appears from these documents that S. A. Kean, a banker in Chicago, doing business as S. A. Kean & Co., on the 17th day of December, 1890, made a general assignment under the assignment law of this State, to B. F. Jacobs; that Jacobs accepted the trust and entered upon the discharge of his duties under the direction of the County Court; that with the consent of Jacobs, said Kean procured the assent in writing of a majority in number and amount of his creditors to a discontinuance of the proceedings in the County Court, and on the 24th day of July, 1891, an order of discontinuance was entered by the County Court under the provisions of the act of May 31, 1879, amendatory

of the assignment law, which amendment provides that all proceedings under the act may be discontinued upon the assent in writing of the debtor, and a majority of his creditors in number and amount. The order of discontinuance, instead of merely directing that the proceedings be discontinued, went much further, the order in substance being:

"This day comes on to be heard the petition of said Samuel A. Kean, the petition of said Benjamin F. Jacobs, the petitions of the majority of all the creditors of said Samuel A. Kean both in number and amount, all of said petitions praying for an order of this court that the said insolvency proceedings shall be discontinued, and that all the property and assets of said estate shall be ordered turned over to Everett M. Warren; and all parties in interest, including said Everett M. Warren, being present in court, either in person or by counsel, and all of the said parties having had due notice of this proceeding, the court having heard the evidence in open court, and arguments of counsel, finds:

"That the said Samuel A. Kean assents in writing to the discontinuance of said insolvency proceedings, and that he has heretofore by proper instruments of transfer and conveyance, sold and conveyed to Everett M. Warren all his, the said Kean's, right, title and interest whatsoever in and to all of the assets and effects of said insolvent estate; that the said Samuel A. Kean in writing requests this court to enter an order directing the said Benjamin F. Jacobs, assignee herein, to transfer and turn over to said Everett M. Warren, all of the assets of said insolvent estate, including all of its books and documents; that a majority of the creditors of said estate in number and amount have assented and requested the said insolvency proceedings shall be discontinued, and that all the property and effects of said estate shall, by an order of this court, be directed to be transferred and set over to said Everett M. Warren.

"And the court further finds that the said Jacobs requests the discontinuance of said insolvency proceedings, and that the order of this court be entered, ordering him to transfer

to the said Everett M. Warren all of the assets of said insolvent estate.

"And the court further finds that the said Everett M. Warren is legally and equitably entitled to the absolute ownership and possession of the assets and effects of said insolvent estate.

"And the court further finds that it is meet, fit and proper that said insolvency proceedings be discontinued, and that all the assets of said estate, including all the papers and documents belonging thereto, shall be turned over to said Warren.

"Wherefore the court doth hereby order, adjudge and decree that the said Jacobs, assignee herein, shall at once transfer and set over to said Warren all of the' assets of said insolvent estate, including all its books, papers and documents; that the said insolvency proceedings of S. A. Kean & Co. shall be, and the same are hereby forever discontinued; that the said Jacobs, assignee as aforesaid, is hereby discharged from all further duties in the premises as such assignee, and that the said Kean, Jacobs and Warren, or any of them, shall have leave to apply to this court at any time hereafter for all further orders which may be needful or proper for the purpose of carrying out this decree or any part thereof."

In pursuance of such order Jacobs did turn over the assets of said insolvent estate then remaining in his hands to said Warren. It may be said to fairly appear that said assets so remaining and so turned over amounted in value to several hundred thousand dollars.

On the 12th of the succeeding month, Jerome Howe and Arthur Hill filed in the Superior Court their bill setting up the aforesaid proceedings, and that at the time of the making of the assignment to Jacobs they were creditors of Kean to the amount of $4,796.51, which claim was by them in said insolvency proceedings in the County Court duly proven and was allowed; that they have never consented to the discontinuance of such proceedings, or the turning over of the assets of said estate to Warren, or the discharge of Jacobs,

and have never sold, transferred, settled or compromised, or been paid in any way their said claim. The bill charged that Kean, Warren and Jacobs conspired and confederated together to have said insolvency proceedings discontinued and the assets turned over to Warren for the purpose of cheating and defrauding the creditors of said Kean; that Kean is insolvent and has no property or assets save those assigned to Jacobs for the benefit of complainants and other creditors; that Warren claims to own and possess all of such assets as of his property, and is disposing of the same as he sees fit; that Warren, as complainants are informed and believe, is not financially good and responsible for the amount and value of said property, so to him turned over.

It was insisted in said bill that under the assignment made to Jacobs by Kean, the property so assigned became impressed with an irrevocable trust for the benefit of the creditors of the said assignor.

On the 22d of October, 1891, John A. Brown filed an intervening petition adopting the allegations and prayer of the bill filed by Howe and Hill, and further setting up that he was a creditor of said Kean who, having duly proven in said County Court his claim and had the same there allowed, did consent to compromise and settle his claim for thirty-five cents on the dollar, but did not consent to a dismissal of the " said case " out of the County Court; that he has not been paid anything on or for his said claim, although he has applied for payment to Warren and to Morris & Ganse, attorneys, who claimed to be acting in the interest of some one connected with said insolvent estate; said Warren and said Morris & Ganse having at one time promised to pay him thirty-five cents on the dollar for his claim.

The bill prayed for the appointment of a receiver to take possession of all of the assets so assigned to Jacobs and turned over to Warren, for an injunction against the disposal of such assets and for their sale and a distribution of the proceeds among the creditors of Kean. It appeared that in the insolvency proceedings 1031 creditors proved claims, amounting to $524,857.91. Kean demurred to the

bill and petition. Warren and Jacobs answered denying all charges of conspiracy and improper conduct and insisting upon the entire regularity and lawfulness of all that had been done. The court upon motion appointed a receiver and ordered that Jacobs, Kean and Warren at once turn over to the receiver all of the estate conveyed by Kean to Jacobs.

Messrs. KRAUS, MAYER & STEIN, for appellant Everett M. Warren.

Since the passage of the Voluntary Assignment Law of 1877, the County Court has general, full and complete jurisdiction in assignment matters, and its orders and decrees therein entered can not be collaterally attacked. Freydendall v. Baldwin, 103 Ill. 329, 331; Hanchett v. Waterbury, 115 Ill. 220; Field v. Ridgely, 116 Ill. 424; Farwell v. Crandall, 120 Ill. 70; Preston v. Spaulding, 120 Ill. 232; Hanford Oil Co. v. First National Bank, 126 Ill. 584, 689; Wilson v. Aaron, 132 Ill. 238, 241; Frank v. Moses, 18 Legal News, 313; Newlin v. Bailey, 15 Ill. App. 199, 204; Mersinger v. Yager, 16 Ill. App. 260; Field v. Ridgely, 18 Ill. App. 56; Strattan v. Tabb, 8 Ill. App. 225, 227, 228; Traver v. Rogers, 16 Ill. App. 372–4; Myers v. Deering, 21 Ill. App. 58; Colby v. O'Donnell, 17 Ill. App. 473; Boyden v. Frank, 20 Ill. App. 169.

An assignment in this State, since the Voluntary Assignment Law of 1877, can now only be made under that statute and is in all respects absolutely controlled and regulated by that law. It must be governed by and administered under all the provisions of that act, including Sec. 15, which provides for a discontinuance. All cases cited *supra;* also Schroeder v. Walsh, 120 Ill. 403, 412; Hanchett v. Waterbury, 115 Ill. 220; Farwell v. Cohen, 28 N. E. Rep. 35.

"Every presumption will be indulged in favor of the jurisdiction of a court of general jurisdiction, and the County Courts in this State are courts of general jurisdiction with respect to all matters coming within the purview

of their jurisdiction, as given by law." Matthews v. Hoff, 113 Ill. 90, 96; In re Lindauer Prohibition Proceedings, 21 Legal News, 133; Propst v. Meadows, 13 Ill. 157; Bostwick v. Skinner, 80 Ill. 147, 153; Housh v. People, 66 Ill. 178; Reynolds v. People, 55 Ill. 331; Moffitt v. Moffitt, 69 Ill. 644; People v. Cole, 84 Ill. 327; People v. Stacy, 11 Ill. App. 506–7; People v. Lott, 36 Ill. 447.

The County Court has full equitable as well as common law powers upon the subject-matters intrusted to it by the constitution or the legislature. Union Trust Co. v. Trumbell, 27 N. E. Rep. 27; In re Corrington, 124 Ill. 363, 366; Field v. Ridgely, 116 Ill. 424; Hanchett v. Waterbury, 115 Ill. 220; Farwell v. Crandall, 120 Ill. 70; Preston v. Spaulding, 120 Ill. 208; Brandon v. Brown, 106 Ill. 519, 524; Dixon v. Buell, 21 Ill. 203; In re William Steele, 65 Ill. 322, 324; Bond v. Lockwood, 33 Ill. 212, 218; Freydendall v. Baldwin, 103 Ill. 325, 329; Newlin v. Bailey, 15 Ill. App. 199–204; Mersinger v. Yager, 16 Ill. App. 260; Field v. Ridgley, 18 Ill. App. 56; Stratton v. Tabb, 8 Ill. App. 225, 227–8; Traver v. Rogers, 16 Ill. App. 372, 374; Myers v. Deering, 21 Ill. App. 58; Colby v. O'Donnell, 17 Ill. App. 473; Milligan v. O'Conor, 19 Ill. App. 487, 491; Boyden v. Frank, 20 Ill. App. 169; Frank v. Moses, 18 Legal News, 313, where the court styles the insolvency proceedings as being "of an equitable character."

It being established that the County Court is not an inferior court, it follows that nothing shall be intended to be out of its jurisdiction as a superior court, but that which specially appears to be so. On the contrary, nothing shall be intended to be within the jurisdiction of an inferior court, but that which is expressly alleged. Beaubien v. Brinkerhoff, 2 Scam. 273; Lacroix v. County Com'rs, 50 Conn. 321, 324; Abbott's Law Dic. (Title "Courts"); 2 Bacon's Abr., 624, 625; McCormick v. Sullivan, 10 Wheat. star page 193; Cooper v. Reynolds, 10 Wall. 308, 316; Kemp's Lessee v. Kennedy, 5 Cranch, 173, and cases cited *supra.*

If the court has jurisdiction of the subject-matter in any

case it must determine for itself whether it has jurisdiction in a particular case, and if it determine erroneously as to a particular case, the relief is by appeal or writ of error and not in a collateral proceeding. Certainly the County Court has jurisdiction in assignment proceedings. Black on Judgments, Secs. 245, 246, 248; Brown on Jur., Sec. 20, note 2; Elliott v. Piersol, 1 Pet. 328; Pursley v. Hayes, 22 Ia. 33; Grignon's Lessee v. Astor, 2 Howard, 319; Thompson v. Tolmie, 2 Pet. 157; Brown v. Wood, 17 Mass. 68; Ackerly v. Parkinson, 3 Maule & Selw. 411; Smith v. Mayor of London, 6 Mod. Rep., star page 78; Heldenen v. Davis, 28 W. Va. 324, 327; Brussels v. Jacoway, 33 Ark. 191; State v. Col. & Ang. R. R. Co., 1 Rich. (S. C. Law) 46, 52.

The jurisdiction of a cause is the power over the subject-matter given by the laws of the sovereignty in which the tribunal exists. The County Court had jurisdiction over the subject-matter of this cause. Bouvier's Law Dic., Vol. 2, Title, "Jurisdiction;" Wright v. Wallbaum, 39 Ill. 554, 563; Young v. Lorain, 11 Ill. 624, 633, 637; Fitzgibbon v. Lake, 29 Ill. 165, 166; Hobson v. Ewan, 62 Ill. 146; Stowe v. Kimball, 28 Ill. 93, 107; Mulford v. Salzenbach, 46 Ill. 303, 308; Grignon's Lessee v. Astor, 2 Howard, 319, 338, 340, 341, 343.

The decree of the County Court discontinuing the insolvency proceedings and awarding other relief, can not be attacked collaterally for alleged fraud or irregularity practiced in the proceedings in which it was obtained.

The precise question has been settled not only in the cases, *supra*, but in points V–VII. Black on Judgments, Sec. 248; Commonwealth v. Stacey, 100 Pa. St. 613; Wiley v. Pavey, 61 Ind. 457; Brown v. Life Ins. Co., 86 Mo. 51; Thornton v. Hogan, 63 Mo. 143; Chapman v. Brewer, 114 U. S. 158, 169; Cobbossee Nat. Bank v. Rich, 16 Atl. R. (Sup. Ct. Me., Jan. 1, 1889), 506, 510; Same case, 81 Maine, 164, 174; Humphreys v. Swett, 31 Me. 192.

In the latter case the court says :

"To permit creditors who had an allowance of their claims against a bankrupt  *  *  *  to impeach the discharge and certificate would, in effect, secure to them an

appeal from the decrees of the bankrupt court to any court of a State having jurisdiction of the parties.  * * * The plaintiff in this case having proved his claim in bankruptcy, had the opportunity of objecting to the discharge of the bankrupt for the causes on which he now relies for the impeachment of the discharge. If he did not avail himself of his rights  * * * he is not entitled, in consequence, to a privilege which the law does not afford him. If he did object to the discharge, he had a hearing before a court of competent jurisdiction, and the decree of discharge is, as to him, in the nature of a judgment, and he is concluded by that decree."

To the same effect—Field v. Ridgely, 116 Ill. 432; Lyon v. Marshall, 11 Barb. 241; Downer v. Rowell, 25 Vt. 336.

Findings of the court rendering a judgment or decree are conclusive, and where such findings appear in the judgment or decree it can not be collaterally attacked on the ground that the findings are untrue. Andrews v. Bernhardt, 87 Ill. 365; Harris v. Lester, 80 Ill. 307; Fitzgibbon v. Lake, 29 Ill. 165, 177; Searle v. Galbraith, 73 Ill. 269; Wimberly v. Hurst, 33 Ill. 166; Bostwick v. Skinner, 80 Ill. 147; Hernandez v. Drake, 81 Ill. 34; Sloan v. Graham, 85 Ill. 26; Reddick v. State Bank, 27 Ill. 145–147; Mason v. Patterson, 74 Ill. 191, 195; Osgood v. Blackmore, 59 Ill. 261, 265, where the court says:

" The court, to acquire jurisdiction of the parties, has only to have them before it, and whether by legal notice, by service or voluntary appearance, does not matter; and where the record shows or the court finds this jurisdictional fact, the record can not be contradicted or questioned in a collateral proceeding.  * * * Where the court has adjudged that there was jurisdiction of the person, we can not look beyond the record, or receive evidence outside of it to disprove the finding. In this respect the question can alone be tried by the record." Precisely to the same effect is Andrews v. Bernhardt, 87 Ill. 365.

Having jurisdiction of the person and the subject-matter, it makes no difference whether the decision of the County

Court was correct or not. The judgment, until reversed, is binding in every court. Having the right to decide every question that occurred in the case, the errors and irregularities, if any exist in the judgment, should have been corrected by appeal or writ of error. Swiggart v. Huber, 4 Scam. 364, 371; Rockwell v. Jones, 21 Ill. 279, 285; Mulford v. Stalzenback, 46 Ill. 303, 307; Young v. Lorain, 11 Ill. 624, 637; Hobson v. Ewan, 62 Ill. 146, 154; Gardner v. Maroney, 95 Ill. 552, 559; Hernandez v. Drake, 81 Ill. 34, 38; Richards v. The People, 81 Ill. 551, 554; C., B. & Q. R. R. Co. v. Chamberlain, 84 Ill. 331, 343; Bockmaster v. Carlin, 3 Scam. 104, 107; Goudy v. Hall, 36 Ill. 313, 320; Wright v. Wallbaum, 39 Ill. 554, 564.

When the validity of acts done under a judicial proceeding is collaterally called in question, we have to look only to the jurisdiction, and if that existed, it matters not how erroneous the proceedings of the court may have been. The rights of other persons (like Warren), acquired while such proceedings were unreversed, and by virtue of them, must be protected. Young v. Hall, 36 Ill. 313, 319, 320; Feaster v. Fleming, 56 Ill. 457, 459; Young v. Lorain, 11 Ill. 637; Mulford v. Salzenback, 46 Ill. 306; McJilton v. Love, 13 Ill. 495; Goodwin v. Mix, 38 Ill. 115.

A court will refuse to appoint a receiver where the exercise of such power is one of doubt, or where its exercise will cause confusion or difficulty, or if there be doubt as to the party making the application for a receiver being in the end entitled to a judgment in his favor upon the merits. High on Receivers, Sec. 8; Beach on Receivers, Sec. 5; Wilkinson v. Dobbie, 12 Blatchf. 170, 173; Mays v. Rose, Freeman, (Miss.) 703; Owen v. Homan, 3 Mac. & Gord. (Eng. Chy.) 378, 411; Orphan Asylum v. McCartee, Hopkins' Chy., star pages 430, 435.

In the First Natl. Bank v. Gage, 79 Ill. 207, 209, it is said: "A receiver should be appointed in no case unless it is made to appear there is an imperative necessity for the step, to preserve some particular property for such parties as shall be entitled to the benefit."

In Pomeroy's Equity Jurisprudence, Vol. 3, Sec. 1331, it

is said that "one of the most material circumstances, without which the court would hardly make the appointment, is the most reasonable probability that the plaintiff asking for a receiver will ultimately succeed in obtaining the general relief sought for by his suit." And in the note the author briefly quotes from Blondheim v. Moore, 11 Md. 365, that "there is no case in which the court appoints a receiver merely because the measure can do no harm," which is substantially the same language as that used by the chancellor in Orphan Asylum v. McCartee, Hopkins' Chy. (N. Y.) 429, and also in Corey v. Long, 43 How. Prac. 498.

A receiver will not be appointed where those seeking the relief have ample redress by the usual course of proceedings at law. High on Receivers, Sec. 10; Beach on Receivers, Sec. 5; Parmly v. Tenth Ward Bank, 3 Edw. Chy. 395; Corey v. Long, 43 How. Prac. 497.

We have already shown that complainants had an ample remedy at law, by coming into the County Court at the proper time and moving to vacate the decree complained of, or by way of appeal or writ of error.

And the same principle applies where a person having a remedy at law loses that remedy by his own *laches;* he can not come into equity and have a receiver. High on Receivers, Sec. 10; Drewery v. Barnes, 3 Russ. 94.

To warrant the appointment of a receiver, it must clearly appear that there is actual property in existence which ought to be protected. High on Receivers, Sec. 9; Whitworth v. Whyddon, 2 Mac. & G. 52.

In the present case there is an absolute and unequivocal denial on the part of the defendants that they have any of the property over which it is sought to appoint a receiver, and there is a further positive and specific averment under oath that said property and its proceeds, weeks before the filing of the bill, were entirely transferred and disposed of, and beyond the control, custody and possession of Warren as well as Jacobs.

Messrs. Jesse A. Baldwin and Nelson Monroe, for appellant B. F. Jacobs.

Messrs. P. S. GROSSCUP and F. L. WEAN, for appellant S. A. Kean.

Messrs. JOHN M. HAMILTON and A. J. HIRSCHL, for appellees.

A court of equity has full power and jurisdiction to take up a trust estate and enforce a trust, when another court is not claiming jurisdiction over it, or when another court has had jurisdiction which it has voluntarily terminated, and it is proper for a court of equity in assuming such jurisdiction, to appoint a receiver to take charge of the property, as the officer of the court.

A court of equity has jurisdiction to enforce the trust and preserve rights of beneficiaries where a deed of assignment has been made creating the trust for the benefit of creditors. Farwell v. Nilsson, 133 Ill. 53.

The remedy is in equity and not at law. Hexter v. Loughrey, 6 Grat. 362; 9 N. E. Rep. 655.

Before the statute was enacted, the jurisdiction in equity was recognized. Gibson v. Rees, 50 Ill. 397; Finley v. McConnell, 60 Ill. 262; Asay v. Allen, 124 Ill. 391.

And since the enactment of the statute, it is said equity will not interfere, but in all the cases this is said while the County Court is still exercising jurisdiction, and even then it is said that equity will not interfere, except perhaps under extraordinary circumstances and to prevent a failure of justice. Field v. Ridgley, 116 Ill. 432; also see 115 Ill. 229.

There may be special circumstances under which equity will intervene. Paddock v. Stout, 121 Ill. 582; Wilson v. Aaron, 36 App. Court, 582; Freydendall v. Baldwin, 130 Ill. 330.

Equity will assume jurisdiction where its intervention is indispensable to preserve rights and property. Lindauer v. Lang, 29 App. Court, 190.

The County Court has no jurisdiction to enforce a trust, but simply to administer and distribute the estate under the Voluntary Assignment Act. Lill v. Brant, 1 Ill. App. 271.

The court of equity obtains jurisdiction by sworn petition, and it is its duty to inquire into the grievance and afford protection if it seems needed, although the entire petition is denied by affidavits. In re Farnam, 75 N. Y. 187.

Injunction and receiver are the usual and appropriate remedies. Cohen v. Maurice, 70 Ga. 313.

And in general it may be taken as a rule that where the legal estate is vested in a person claiming an interest paramount to that of the litigant parties, so that the litigant parties can only have equitable interests, the court will grant a receiver. Daniell's Chan. Practice, 1716.

The court will appoint a receiver at the instance of parties beneficially interested even where there is no fraud or spoliation, provided it can be satisfactorily established that there is danger to the estate or fund unless such step is taken. Daniell's Chan. Practice, 1722.

When a man takes a conveyance of a legal estate subject to equitable interests, he must satisfy those interests or submit to a receiver. Daniell's Chan. Practice, 1724.

Where the relief to be obtained by a *cestui que trust* consists only in the recovery of money, this relief the courts of equity will decree when necessary, whether it involves the payment of a single sum or an accounting by a trustee. Pomeroy's Eq. Jur., Sec. 158.

Jurisdiction of courts of equity over property impressed with a trust, remains, although there may be a remedy at law. Pomeroy's Eq. Jur., Secs. 276, 277 and 278.

Courts of equity will always appoint new receivers to take charge of trust property, where the old trustee denies his trust. Pomeroy's Equity Jur., Sec. 1087.

The intent of the whole law is to protect the creditors equally (Farwell v. Cohen), and also to provide a speedy and economical distribution of the estate. Preston v. Spaulding, 120 Ill. 219.

No shift or artifice giving advantage to any creditor or creditors is to be tolerated. Heuer v. Schaffner, 30 Ill. App. 339.

A creditor is not to be deprived of his vested right, unless

the court is compelled so to do by the plain and imperative mandate of a power which can not be resisted. Worman v. Wolfsberger, 19 Pa. State, 63.

The County Court had no power or authority to order the trustee, Jacobs, to give this estate away, and so far as that part of the order is concerned, it is utterly void and can not be claimed as *res adjudicata*.

A strange claim is set up in this case, especially by counsel for Warren, that the order of the County Court directing Jacobs to turn this estate over to Warren is so far final as that it must be considered as *res adjudicata*. We have always heretofore learned that there could be no such thing as *res adjudicata* unless there was first a *res* or thing to be acted upon.

Second. There must be parties to the question or proposition before the court.

Third. There must be a question which the court has authority and jurisdiction to decide.

Fourth. The court must have jurisdiction of the parties to the question, and must have jurisdiction not only of the parties and subject-matter, but must have the power and authority to decide it. All of these elements are wanting as to that part of the order directing Jacobs to give this property away to Warren. Warren was not a party to the proceeding in the County Court at all. No question had been properly submitted to the court for its decision regarding the ownership of the property by Warren. He did not claim it as a purchaser nor as a prior owner, therefore there was neither jurisdiction of the person, nor was there a question before the County Court for its decision as to whether Warren was the owner of this property or not.

While it is true that the County Court has some chancery powers which may be exercised in the proper administration of estates under its jurisdiction by virtue of the statute, yet it is further true that it has no general chancery powers and hence can not entertain a general chancery action, nor can it make a decree in the nature of quieting title, nor do anything in the way of general chancery jurisdiction except

such necessary chancery powers as pertain to the proper administration of estates which are placed in that court by virtue of the provisions of the statute. Hanford v. F. N. Bank, 126 Ill. 589.

Orders made by it beyond authority conferred on it by the statute are a nullity. Union National Bank v. Doane (Ill.), 29 N. E. Rep. 908.

When the County Court administered the estate, it was a statutory proceeding, and all steps required by the statute must be strictly pursued. C. & N. W. R. R. v. Gault (Ill.), 23 N. E. Rep. 25.

Waterman, P. J. It is not contended that the County Court had not authority to make an order discontinuing the insolvency proceedings. What is insisted by counsel for appellees is, that the County Court had no warrant for that portion of its order which directed that the assets of the insolvent estate be turned over to Warren and found Warren to be the owner thereof; that by the terms of the deed of assignment to Jacobs there was created an irrevocable trust for the use of the creditors for whose benefit the assignment was made, and that so soon as the insolvency proceedings were discontinued, a common law assignment may be said to have come into existence, it being then the duty of Jacobs to have gone on and administered the trust as though no assignment statute existed; and that he having refused so to do, a court of equity will appoint a trustee to carry out the trust. In other words, it is contended that the only effect of the order of discontinuance entered by the County Court was to deprive that court of jurisdiction over the assignee and the estate. It is also urged that it was grossly improper for the assignee to have united in a petition for a discontinuance of the insolvency proceedings, or to have consented thereto. The first duty of the assignee is to the creditors; to them he owes the utmost fidelity. The County Court is vested with a discretion as to whether it will, upon the petition of a majority in number and amount of the creditors, order a discontinuance.

The court manifestly will do what, all things considered, it deems judicious and best. It would certainly be the duty of the assignee, if asked by the court to express ·to it his opinion as to what the interests of the creditors required, as to a proposed discontinuance of the proceedings, to do so; and we see no reason why, acting in good faith, with an eye single to the interests committed to his charge, he may not voluntarily advise the court upon this matter. Clearly, whether the assignee advised or opposed the granting of the petition can not affect the validity of the order. Nor is the order of discontinuance rendered invalid if it be the case that there was added thereto an order which the court had no power to make. We are therefore called upon to consider what the effect of a valid order of the County Court, discontinuing insolvency proceedings, is upon the estate and the parties interested. The statute seems to declare with clearness the effect of such an order; it provides that in such case all parties shall be remitted to the same rights and duties existing at the date of the assignment except so far as such estate shall have already been administered and disposed of.

Appellees' contention as to the meaning of this seemingly plain provision, is one that completely nullifies the statute. It is inconceivable that such language should have been used if the legislature had intended that the only change wrought by the order of discontinuance should be to divest the County Court of its jurisdiction over the administration of the estate. We have been referred to no case and we are not aware of any in which the construction assumed by appellees has been placed upon any similar provision of an insolvency statute. The Supreme Court of this State in Hanchett v. Waterbury, 115 Ill. 220, in substance say that a valid general assignment for the benefit of creditors can now be made only under the statute, and that to the County Court is committed the jurisdiction of administering the insolvent estate. Appellees in effect contend that under the statute there may be two kinds of insolvency proceedings; first, that over which the County Court exercises jurisdiction;

second, that brought into existence by the discontinuance of the proceedings there had, over which secondary proceeding any court of chancery may exercise control. Such construction of the statute is in opposition to the uniform interpretation that has been placed upon it. From its enactment, it has, without exception, been held that all general assignments for the benefit of creditors are controlled by its provisions, and that to the County Court is committed an exclusive jurisdiction over the management and distribution of the assigned estate. Hanchett v. Waterbury, *supra;* Freydendall v. Baldwin, 105 Ill. 325–330; Farwell v. Cohen, 28 N. E. 35; Farwell v. Crandall, 120 Ill. 70; Boyden v. Frank, 20 Ill. App. 169; Wilson v. Aaron, 132 Ill. 238. It is urged that the deed of assignment executed by Kean to Jacobs, in terms conveys the assets irrevocably to the assignee. The language used in making the assignment can neither add to or take from its effect. All voluntary assignments for the benefit of creditors now stand upon the same footing. Farwell v. Cohen, *supra;* Hanchett v. Waterbury, *supra;* Farwell v. Crandall, *supra;* Hanford Oil Co. v. First National Bank, 126 Ill. 584. In the case of Frank v. Moses, 18 Legal News, 313, the Supreme Court had under consideration an order of the County Court discontinuing insolvency proceedings and turning over the assets to a third party. Such order was there approved; while the position of an irrevocable trust was not there assumed, yet it is impossible that the court would, as it did in that case, have affirmed an order directing the imprisonment of the assignee for failing to turn over the assets as ordered, except upon the understanding and interpretation of the statute, that by the order of discontinuance the title of the assignee was divested and the trust created by the assignment brought to an end.

With great earnestness it is contended that the complainants in this cause have been shamefully defrauded by the action of the County Court; that a vile conspiracy was entered into and carried on by Jacobs, Kean and Warren, and that to deny to the complainants the relief they seek in this cause, which can only be had through the instrumental-

ity of a receiver, will not only be a denial of justice, but make of the assignment law a potent instrument for the perpetration of fraud and injustice; and it is confidently asked how the County Court could confer title to these assets upon Warren when the conferring of such title was in no way necessarily incidental to the discontinuance of the insolvency proceedings. In the view we take of this matter it is of no consequence, so far as the judgment of this court upon these appeals is concerned, whether the County Court could or did by its order as against the complainants or other creditors of Kean, establish title in Warren to the assets of this estate. The County Court could and did discontinue the proceedings; that order left all parties where they stood at the date of the assignment; that is, left Kean the owner of these assets, subject to whatever liens, by way of judgment or otherwise, existed thereon. Subject to such liens, if any, Kean was at liberty to make such transfer of his assets to Warren or anybody else as he saw fit. Such transfer would, like any other transfer by a debtor of all or a portion of his property, be subject to investigation, and might be held fraudulent as to creditors. If no order of transfer to Warren had been made, but Kean, by deeds by him executed, had made conveyance to Warren, any judgment creditor of Kean, execution having been returned *nulla bona*, might have filed a bill making Warren a party defendant thereto and had the transfer set aside if found to be fraudulent as regards creditors; but without having obtained judgment, a creditor could not have proceeded. The position of appellees is that while the order of the County Court transferring the assets to Warren is void, yet it does away with the necessity that they should exhaust their remedy at law ere they appeal to a court of equity. In considering what is said by appellees as to the great value of the estate transferred to Warren, and the fact that they have not been paid anything upon their claim, it must be borne in mind that appellees were parties to the proceeding and order under which the transfer was made; that they had due notice thereof (Field v. Ridgley, 116 Ill. 424–432;

Andrews v. Bernhardt, 87 Ill. 367); that they were at liberty by evidence or argument to show to the County Court that such order ought not to be made, and when made that they might have excepted thereto, sued out a writ of error, or appealed therefrom; but they neither objected to its entry, nor have they taken any appeal from the action of that court. In the bills filed in this cause appellees have failed to adduce any reason for their manifest neglect to insist upon their right in the County Court to object and to appeal. What would have been said of appellant Warren, if instead of answering the bills filed in this cause, he had suffered them to be taken as confessed, and had failed to object or except to a decree taking these assets from his hands and distributing them among the creditors of Kean? Would he have been heard if he had then gone into the Circuit Court alleging that he gave full value for the property and that his purchase was *bona fide?* We do not mean to be understood as now passing upon the question of whether complainants are, as to the title of Warren, concluded by the order of the Circuit Court; when complainants shall, as attaching or judgment creditors, have in a proper proceeding necessarily presented such question, it will then be considered.

Appellees charge that Kean, Jacobs and Warren wrongfully combined and confederated to procure the transfer of the assets to Warren, but what the wrongful acts were, is not shown. It is not wrongful to combine to bring about a discontinuance of insolvency proceedings; the statute contemplates such combination; they are necessarily the result of combination. Nor can it be said to be wrongful to combine to have such an order of transfer entered as was made in this case. The Supreme Court in the case of Frank v. Moses, 18 Legal News 313, says that the true construction is not that the County Court has authority only to dismiss the proceedings and to order the unadministered assets to be returned to the debtor; and further that to turn the goods, at the request of the assignor, over to a third party, is the same practically as turning them over to the debtor. It is

wrongful to combine to cheat or defraud any one, but it does not therefore follow that any kind of suit can be maintained by any one cheated or defrauded; nor is a simple charge of combination to cheat and defraud a sufficient charge of fraud. The particular acts constituting the fraud must be set forth. Story, Eq. Pleadings, Sec. 251–252; Hovey v. Holcomb, 11 Ill. 660. No excuse or reason is given by appellees for not having availed themselves of their right to object to or appeal from the order of the County Court, nor does it appear that any of the wrongful combination of which they now complain was then unknown to them. True it is, that a decree may be attacked and set aside as having been obtained by fraud; but in such case the fraudulent acts must be set forth and the bill must have for its object the setting aside of the decree because thereof. In the present case, the bills are not to set aside the order of the County Court but to disregard it; to obtain the assets of the estate in spite of it.

We do not understand, as is insisted by counsel, that it is gravely or otherwise urged that under the amendment of 1870, the assignment law has put it in the power of the assignor and a majority of the creditors to rob the remainder; we do understand that unjust orders, decrees and judgments may be rendered in any proceeding if the parties thereto do not object; and we further understand that as to all injustice the methods of attack pointed out by the law must be followed. It is quite true that equity never allows a trust to fail for the want of a trustee, and that it is one of the provinces of a court of equity to provide for and to enforce the execution of trusts. There is in the present case no more of a trust than there is in the instance of any debtor who is alleged to have conveyed his assets in fraud of his creditors. In such case the circumstances may be such as to justify the taking out of an attachment, or it may be necessary to first obtain judgment, issue execution and proceed under it, or if it be returned *nulla bona*, by creditors' bill.

A mere contract creditor is not entitled upon the bare

showing of a fraudulent transfer to maintain a suit in equity and to have a receiver appointed. Appellees are simply contract creditors making a collateral attack upon an order of court rendered in a proceeding to which they were parties, and of which they had notice. They have not exhausted their remedy at law nor have they endeavored by appeal or writ of error to set aside the order of which they complain. In this proceeding they have shown no more cause for the appointment of a receiver than has every creditor whose debtor, it is alleged, has made a transfer of his property fraudulent as to creditors.

The order appointing a receiver will be reversed and the cause remanded with directions to revoke the whole order appointing the receiver, and discharge him.

*Reversed and remanded.*