MARSHALL FIELD *et al.*

*v.*

NICHOLAS H. RIDGELY *et al.*

*Filed at Springfield March 27, 1886.*

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*under the statute— of a prior execution lien.* The issuing of an execution upon a valid judgment, and its levy upon goods by the sheriff, will give the plaintiff in execution a valid lien on the same prior to the claims of other creditors of the defendant in the execution, under an assignment made by him after the execution came into the hands of the officer.

2. In this case, after the entry of a judgment by confession and the issue of an execution thereon, the judgment debtor made a general assignment of his property, under the statute, for the benefit of creditors, and the assignee replevied the goods levied upon under the execution, and took the same from the sheriff, and made sale of them. The other creditors proved their claims in the county court, and that court directed the assignee to pay the judgment creditor first, out of the proceeds of the sale, which was done: *Held,* that the judgment creditor had the prior lien on the goods when re-plevied, and in equity was entitled to have their proceeds applied, as they were, in satisfaction of his judgment, and that the other creditors could not maintain a bill to have such proceeds returned and applied in payment of their claims, in the absence of any other equitable grounds.

3. SAME—*failure of a creditor to record his mortgage—or to make prompt collections—or to give notice of his dealings with his debtor—as affecting the rights of other creditors.* The fact that a creditor having judgment notes and a mortgage to secure them, neglects to record the mortgage given to secure the same, and fails to take prompt measures to collect his notes when due, or give notice to others dealing with the debtor and giving him credit in ignorance of his financial embarrassment, when not asked to do so by them, is not evidence of fraud as against such subsequent creditors, so as to make the prior creditor a trustee for them in respect to property levied upon under a judgment and execution in his favor.

4. A party is under no legal obligation to disclose the state of his account with a customer, to others having dealings with the latter, and his failing to do so, when not specially interrogated by one having a personal interest in knowing, or, failing to make the extent of his claim known by recording a mortgage securing the same, will not postpone his superior lien on the debtor's property and effects to such other and subsequent creditors.

5. SAME—*county court—its equitable jurisdiction in assignments of insolvents.* The county court when sitting as an insolvency court, is clothed with ample power to pass upon and settle equitable as well as legal claims against the estate in the hands of the assignee; and the jurisdiction of that court having once attached, a court of equity will not interpose, except, perhaps, under extraordinary circumstances, and to prevent a failure of justice.

6. SAME—*conclusiveness of the action of the county court.* A creditor who proves his demand against an insolvent debtor in the county court, and thereby submits to its jurisdiction, is thereafter bound and concluded by all orders made by that court affecting the fund for distribution, or his rights as a distributee.

APPEAL from the Appellate Court for the Third District;— heard in that court on writ of error to the Circuit Court of Sangamon county; the Hon. WILLIAM L. GROSS, Judge, presiding.

Mr. JAMES C. CONKLING, for the appellants:

It is a well established principle that where a creditor has, through the instrumentality of a court of equity, sought out and discovered the property of his debtor, which he had before been unable to discover and seize upon by execution at law, he becomes entitled to a preference over other creditors to have his judgment first satisfied. *Rappleye* v. *International Bank,* 93 Ill. 399; *Smith* v. *Lind,* 29 id. 30; *Ballentine* v. *Beall,* 3 Scam. 203; *Ward* v. *Enders,* 29 Ill. 522.

The filing of complainants' claims with the assignee does not estop them from pursuing this remedy. They do not thereby lose the right to secure assets fraudulently conveyed before the assignment. *Estabrook* v. *Messersmith,* 18 Wis. 572.

The assignee has no more right to attack a fraudulent conveyance than the insolvent has. *Choteau* v. *Jones,* 11 Ill. 319;

*String* v. *Goldman*, 8 Biss. 554; *Porter* v. *Douglas*, 27 Miss. 396; *Brownell* v. *Curtis*, 10 Paige, 318.

The county court has full power to distribute only the assets that may come to the hands of the assignee. (*Lund* v. *Skanes*, 96 Ill. 183.) But other courts and appliances outside the county courts, may be used for the purpose of securing assets, and increasing the fund to be distributed.

The judgment by confession in this case having been fraudulently devised for the purpose of hindering, delaying and defrauding complainants, is utterly void as against complainants, though it is good and valid as against the insolvent debtors and their assignee. *Fitzgerald* v. *Forrestal*, 48 Ill. 230; *White* v. *Russell*, 79 id. 156; *Beebe* v. *Saulter*, 87 id. 521; *Upton* v. *Craig*, 57 id. 259; *Harmon* v. *Harmon*, 63 id. 513; *Finley* v. *McConnell*, 60 id. 261; *Chouteau* v. *Jones*, 11 id. 319.

Goods fraudulently transferred, with intent to hinder and delay or defraud creditors, do not pass to the assignee, but creditors alone can reach them. *Lund* v. *Skanes*, 96 Ill. 183; *Estabrook* v. *Messersmith*, 18 Wis. 578.

The allowance of a claim against an estate is not conclusive on the lien, and the order of the county court on the assignee to pay the claim of Ridgely & Co. before paying other creditors, is not conclusive against the latter, they being no parties to it. *Curry* v. *Mace*, 90 Ill. 611; *Manufacturing Co.* v. *Webster*, 26 id. 239; *Mooers* v. *White*, 6 Johns. Ch. 389; *Hopkins* v. *McCann*, 19 Ill. 116.

The creditors who have filed their claims with the assignee have a vested interest in the fund in the hands of the assignee, of which they can not be divested by a proceeding to which they were not parties. *Chandler* v. *Brown*, 77 Ill. 334; *Rowell* v. *Chandler*, 82 id. 288; *Chestnut* v. *Pennell*, 92 id. 55; *Insurance Co.* v. *Gulick*, 102 id. 44.

That the concealment of the indebtedness of the firm of Kimber, Ragsdale & Co., and failing to pursue legal remedies

against it, is a fraud against other creditors, see *Hildreth* v. *Sands,* 2 Johns. Ch. 35; *Hildeburn* v. *Brown,* 17 B. Mon. 779; *Scrivener* v. *Scrivener,* 7 id. 374; *Worsley* v. *De Mator,* 1 Burr. 467; *Bank of United States* v. *Houseman,* 6 Paige, 526; *Hilliard* v. *Coyle,* 46 Miss. 309; *Pendleton* v. *Hughes,* 65 Barb. 136; *Carter* v. *Grimshaw,* 49 N. H. 100; *Blannerhassett* v. *Sherman,* 105 U. S. 100.

Judgment notes and warrants of attorney are in the nature of secret liens, which may be used to the injury of other creditors. If a person who has these secret liens, stands by and sees other persons advancing money or selling goods to the debtor, or makes fair representations concerning his credit, without disclosing his liens, he will be postponed in the collection of his debt, to the other creditors. *Draper* v. *Borlace,* 2 Bern. 370; *Lee* v. *Monroe,* 7 Cranch, 366; *Smith* v. *Richards,* 13 Pet. 36; 1 Story's Eq. 201, 202.

In *Burrows* v. *Lehndorf,* 8 Iowa, 96, where a party insolvent or contemplating insolvency, executes several mortgages and deeds of trust of all his property, the whole transaction constitutes a general assignment, and not being made for the benefit of all the creditors alike, is void. *Cole* v. *Dealham,* 13 Iowa, 551; *Perry* v. *Holden,* 22 Pick. 269; *Van Patten* v. *Burr,* 52 Iowa, 519.

There is an analogy between the Assignment law and Bankrupt law in cases of preference. If the creditor is aware of the debtor's intention to take advantage of the Bankrupt law, the security given to him by way of preference is void. Cooke on Bankrupt Law, (8th ed.) 368; *Thornton* v. *Hargraves,* 7 East, 544; *Morgan* v. *Horsman,* 2 Taunt. 241; *Lock* v. *Winning,* 3 Mass. 325; *Ogden* v. *Jackson,* 1 Johns. 370; *Linton* v. *Bartlett,* 3 Wils. 147.

Messrs. PALMERS, ROBINSON & SHUTT, for the appellees:

No breach of duty to the complainants is shown in the bill. The notes, with the warrants of attorney, were legal securities

for *bona fide* indebtedness, and there was no obligation on the part of the defendants in error to disclose their existence to any one. The taking of additional security by way of mortgage was a legitimate transaction, and the only consequence of a failure to record the same, might be the loss of their benefit.

Plaintiffs in error, by proving their claims before the assignee, invested the county court with full and complete jurisdiction as to the funds of the insolvent, in his hands. *Freydendall* v. *Baldwin,* 103 Ill. 330.

The bill also shows that the goods were taken from the hands of the sheriff by the assignee under a writ of replevin. By the levy the defendants in error acquired a prior lien on the property, which could not be divested by the assignment.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the court:

The judgment of the Appellate Court affirming the decree of the circuit court sustaining a demurrer to appellants' bill, and dismissing the same for want of equity, must be affirmed.

The theory upon which appellants seek to recover is clearly without merit, and can not be sustained. The case made by the bill is, in substance, this: The appellants and appellees were both creditors of Kimber, Ragsdale & Co., who had, for a number of years prior to the filing of the bill in this cause, been doing an extensive mercantile business in Springfield, this State. In the spring of 1879, being largely in arrears with appellees, they executed to them some forty-two judgment notes, covering the amount due them at that time. The notes, when given, aggregated $28,500. Prior to the execution of them, to-wit, on the 22d of April, 1878, Wesley F. Kimber and Thomas A. Ragsdale, members of said firm of Kimber, Ragsdale & Co., respectively executed to appellees mortgages on valuable real estate in the city of Springfield, where they were doing business, to secure their future as well as present indebtedness to appellees. The mortgages were

not put on record, nor was any notice given appellants of the existence of them, or of the judgment notes above mentioned, until Kimber, Ragsdale & Co. suspended business, which occurred on the 12th day of January, 1883. On the morning of that day appellees took judgment by confession on the forty-two notes held by them, the principal and interest then amounting to $36,319.39, sued out an execution thereon, and caused the same to be levied on a large and valuable stock of goods belonging to Kimber, Ragsdale & Co. After this, on the same day, Kimber, Ragsdale & Co. made a general assignment for the benefit of their creditors. The assignee shortly afterwards replevied the stock of goods above mentioned, and, under the order of the county court, sold the same at public vendue, for $39,295.08. The assignee also, on the 29th of January, 1883, filed a motion in the Sangamon circuit court to vacate the above mentioned judgment for $36,319.39 in favor of appellees, and against the said Kimber, Ragsdale & Co. The court overruled the motion, and entered an order accordingly. On appeal that order was affirmed by the Appellate Court for the Third District, and also by this court, as will appear by reference to the case of *Conkling* v. *Ridgely & Co.* 112 Ill. 36. Appellees' judgment by confession against Kimber, Ragsdale & Co. being thus sustained, it followed that the execution issued thereon created a valid lien upon the stock of goods upon which it had been levied, and that the sheriff's title was therefore superior to that of the assignee. Such being the case, the county court, upon the application of the assignee, made an order directing him to pay appellees' judgment out of the proceeds of sale of said goods, which he accordingly did. Before the making of this order, the appellants, like other creditors of Kimber, Ragsdale & Co. claiming under the assignment, had filed and proved their claims in the county court as creditors of the insolvent estate.

Upon this state of facts the appellants filed the present bill, by which they seek to recover back from the appellees the

money so paid them by the assignee under the order of the county court, in satisfaction of their judgment against Kimber, Ragsdale & Co., to be applied in satisfaction of appellants' own claim against said firm.

It is first claimed that the judgment of appellees against Kimber, Ragsdale & Co. was entered by the clerk without authority of law, and that the same, and all proceedings under it, are null and void. This position can not be maintained. Indeed, the contrary is expressly held in the case of *Conkling* v. *Ridgely & Co. supra*, where most of the grounds upon which the judgment in question is now assailed, were carefully considered and deliberately overruled. This is conceded. But it is suggested that the appellants were not parties to that proceeding, and that they are, consequently, not bound by it. It may be admitted that the validity of the judgment, as established by that decision, is not, as between the present parties, to be regarded as *res judicata*. Nevertheless, we are fully satisfied with the decision in 'that case, and we see nothing in the case, as now presented, that requires a different conclusion. In so far, therefore, as one case can, on the principle of *stare decisis*, be governed by another, this case is clearly controlled by that.

Admitting, then, the validity of appellees' judgment and execution against Kimber, Ragsdale & Co., as we must, it follows they had a prior and valid lien upon the stock of goods when replevied out of the hands of the sheriff, and that, in equity, appellees are entitled to have the proceeds of the same applied, as they were, in satisfaction of their claim.

The theory of appellants' case, except in so far as it is based upon the alleged invalidity of appellees' judgment and execution, is not as clearly defined as could be wished. This doubtless resulted from the scarcity or indifferent character of the material at the hands of counsel in propounding the theory. As we understand it, however, it is, in substance, that the goods which are the basis of appellants' claim, origi-

nally belonged to them, and that by means of fraud practiced upon them by appellees, they were induced to sell the goods to Kimber, Ragsdale & Co., who, at the time of such sale, were insolvent and financially irresponsible, and that this fact was known to appellees but not to appellants; that when, therefore, the proceeds of the goods passed into appellees' hands, they became *ex malificio* trustees in respect to such proceeds, and as such were bound, in equity, to account to appellants for them. It is clear the charges in the bill are not sufficient to sustain it on this theory. The bill, if framed upon the hypothesis stated, is too vague and uncertain in every respect. But outside of this, the acts of fraud relied on to raise the constructive trust are wholly insufficient. Indeed, of themselves they are no evidence of fraud at all. What are they? First, that appellees failed to put their mortgages on record when executed; second, that they retained in their possession the judgment notes an unreasonable length of time without notifying appellants or others of their existence. These are the only tangible facts alleged in the bill upon which the charge of fraud is based. We are aware of no principle, outside of self-interest and prudence in business, that requires the holder of a mortgage to put it on record at any particular time. By not doing so promptly, he runs the risk of having it postponed to junior liens, and even of losing the benefit of it altogether. As to subsequent purchasers and creditors without notice, such securities take effect from the time of filing for record, only.

As to the complaint that appellees held the notes so long without giving notice of their having them, we perceive no force in it. There is no law or mercantile usage, so far as we are advised, that requires one in business to disclose the state of his accounts with his customers to others having dealings with them, and there are manifest reasons why this should not be done except when the creditor is specially interrogated on the subject by one having a personal interest in

knowing.   It is not charged in this case that appellants ever
sought any information of appellees in respect to the claims of
the latter against Kimber, Ragsdale & Co., or that they ever
said or did anything, outside of what we have already stated,
to mislead appellants with respect to Kimber, Ragsdale & Co.'s
indebtedness to appellees, or in respect to the manner in which
such indebtedness was secured.   The forbearance of a cred-
itor to crush out a struggling debtor upon the first opportunity,
with a view of enabling him to overcome business misfor-
tunes, ought not to be converted by judicial construction into
a species of fraud.   On the contrary, so long as the creditor's
conduct is characterized by good faith, as was evidently the
case here, such forbearance should be regarded by the courts
with favor, rather than otherwise.

We are also of opinion that the appellants are concluded
by the order of the county court directing appellees' judg-
ment to be paid out of the proceeds of the goods in the hands
of the assignee.   The appellants, by appearing and proving
up their claim in the county court, gave that court jurisdic-
tion over their persons, and they were thereafter bound, at
their own peril, to take notice of all orders made by it affect-
ing the fund for distribution, or their rights as distributees.
If an order was made in their absence which was not satis-
factory to them, as is claimed was the case here, they should,
on discovering it, have applied for a reconsideration of the
question in that court, and failing in this, the right of appeal
was open to them.   The county court, when sitting as an
insolvent court, is clothed with ample power to pass upon
and settle equitable as well as legal claims against the estate
in the hands of the assignee, and the jurisdiction of that
court having once attached, a court of equity will not inter-
pose, except, perhaps, under extraordinary circumstances,
and to prevent a failure of justice.

The judgment will be affirmed.

*Judgment affirmed.*