THE ATLAS NATIONAL BANK OF CHICAGO

*v.*

CLARE E. MORE, Assignee.

*Filed at Ottawa October 29, 1894.*

1. COUNTY COURT—*equity powers confined to assigned estates.*  By section 14 of the Assignment act county courts are clothed with both legal and equitable jurisdiction *over assigned estates*, but they have no general chancery powers.

2. CORPORATIONS—*corporate property a trust fund.*  In equity the property of a corporation is a fund held in trust for its stockholders while solvent, and for the payment of its debts when insolvent.

3. SAME—*when parties will be held trustees of corporate property.*  If others than *bona fide* creditors or purchasers possess themselves of the property of an insolvent corporation, they will hold it charged with a trust in favor of creditors.

4. JUDGMENTS—*may be attacked collaterally for fraud.* A judgment or decree procured through fraud of either or both parties, for the purpose of defrauding third persons, may be attacked by such third persons collaterally, whenever and wherever it conflicts with their interests.

5. SAME—*not upheld if procured without liability.* A judgment not founded upon a liability which is due, legal and enforcible will not be upheld, and any third party whose rights are affected may prove there was no debt due from the judgment debtor.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. FLOWER, SMITH & MUSGRAVE, for the appellant :

No contract can be rescinded without returning, or offering to return, whatever has been received. The parties must be placed *in statu quo. Smith* v. *Brittenham,* 98 Ill. 188, and 109 id. 540, and cases cited; Morawetz on Corp. secs. 715, 718.

Where a corporation has had the benefit of a contract, it is estopped from denying its authority to execute it. The plea of *ultra vires* should not prevail, whether interposed either for or against a corporation, when it would not advance justice. *East St. Louis* v. *Gas Co.* 98 Ill. 415 ; *Darst* v. *Gale,* 83 id. 136 ; *Ward* v. *Johnson,* 95 id. 215 ; *Bradley* v. *Ballard,* 55 id. 413 ; *Building Society* v. *Crowell,* 65 id. 453 ; *Whitney* v. *Barlow,* 63 N. Y. 62 ; *Barnes* v. *Sudduth,* 117 Ill. 237; Morawetz on Corp. sec. 693, note 1.

If there be any consideration, the court will not weigh the extent of it. If parties choose to enter into unwise and improvident bargains, they must abide by the consequences, and the court cannot contract for them. 1 Addison on Contracts, sec. 16 ; Pollock on Contracts, sec. 172, p. 235.

If the consideration is valuable, it need not be adequate. 2 Parsons on Contracts, 436 ; *Johnson* v. *Titus,* 2

Hill, (N. Y.) 606; *Stettheimer* v. *Killip*, 75 id. 282; *Wood* v. *Boynton*, 64 Wis. 265; *White* v. *Walker*, 31 Ill. 422; *Oakley* v. *Boorman*, 21 Wend. 588; *Heckenkemper* v. *Dingwehre*, 33 Ill. 538; *Doyle* v *Knapp*, 3 Scam. 334; *Sykes* v. *Chadwick*, 18 Wall. 141; *Worth* v. *Case*, 42 N. Y. 362; *Wilton* v. *Eaton*, 127 Mass. 174; *Lawrence* v. *McCalmont*, 2 How. 426; *Buchanan* v. *International Bank*, 78 Ill. 500; *Butler* v. *Haskel*, 4 Dessau. 674; *Osgood* v. *Franklin*, 2 Johns. Ch. 23.

Messrs. WEIGLEY, BULKLEY & GRAY, and Mr. JACOB NEWMAN, for the appellee:

A creditor who proves his demand against an insolvent debtor in the county court, and thereby submits to its jurisdiction, is bound by its orders. *Field* v. *Ridgely*, 116 Ill. 424; *Hanford Oil Co.* v. *Bank*, 106 id. 504; *Hanchett* v. *Waterbury*, 115 id. 220; *Freydendall* v. *Baldwin*, 103 id. 325; *Ide* v. *Sayer*, 129 id. 230.

Where a party makes, with the officers of a corporation, an illegal contract beyond the power of the corporation, such third party acts with knowledge that the officers have exceeded their power, and between him and the corporation or its stockholders no amount of ratification will make it valid. *Lucas* v. *Transportation Co.* 70 Iowa, 546; *Bouton* v. *Dement*, 123 Ill. 142; *Hall* v. *Turnpike Co.* 27 Cal. 257; *Trust Co.* v. *Miller*, 33 N. J. Eq. 155; *Redmond* v. *Dickerson*, 1 Stockt. 507.

Mr. JUSTICE BAKER delivered the opinion of the court:

For some years prior to September 27, 1888, Wilson & Bayless, a partnership composed of George Wilson, Jr., and Theodore P. Bayless, had been doing business in the city of Chicago as dealers in furniture, which was, for the most part, sold upon the installment plan,—that is, the furniture was delivered and either leases or chattel mortgages obtained from the vendees. They had had a line of credit with the Atlas National Bank, the appellant, with whom they had been doing business for some time,

and as security for loans to them they had, under an
agreement with the bank, kept at the bank, as collateral,
a tin box containing leases and chattel mortgages, and
notes secured thereby, to an extent of about fifty per cent
above their loans.   These mortgages and leases were, in
most instances, for small amounts, and secured upon
household furniture sold to people in moderate circum-
stances all over the city of Chicago.   During two years
and upwards the box of collaterals remained in the bank,
and Wilson & Bayless, and their book-keeper, were al-
lowed free access to it for the purpose of taking away
any collaterals and replacing the same with others.   No
account was kept by the bank of the collaterals so re-
moved and replaced, nor was there any requirement made
by the bank that if Wilson & Bayless collected any of the
collaterals so removed they should deposit the proceeds
with the bank in reduction of their debt.   In addition to
the box of collaterals, Wilson & Bayless also gave the
bank, in March, 1888, two judgment notes, each for $7500,
signed by the members of the firm individually, which
were to be also held as security by the bank.

Some time prior to said first named date of Septem-
ber 27, 1888, George Wilson, Jr., consulted W. C. D. Gran-
nis, the president of appellant, upon the advisability of
forming a corporation which should buy out the merchan-
dise stock of Wilson & Bayless and the good will of their
business,—in fact everything except the chattel mort-
gages and leases belonging to the firm, deposited with
the bank and elsewhere.   Grannis, as the representative
of their largest creditor, consented, and advised an in-
corporation and the transfer of the assets, and stipulated
that Wilson & Bayless should deposit about $11,000 par
value of the capital stock of the new corporation as addi-
tional security for the debt which they owed appellant.

On the date first mentioned, to-wit, September 27, 1888,
Wilson & Bayless, together with their attorney, one
George Warvelle, their book-keeper, one Charles F. Halbe,

and one John M. Wilson, a brother of said Wilson, organized a corporation under the name of Wilson & Bayless Company, which company purchased the stock of goods and succeeded to the business of Wilson & Bayless. It, however, did not purchase the outstanding leases and chattel mortgages of the old firm nor did it assume its liabilities, but it continued the old business at the firm's location on West Madison street, Chicago, Illinois, and continued to do the same kind of business that had been done by Wilson & Bayless as a firm. The directors of the company were George Wilson, Jr., Theodore P. Bayless, George W. Warvelle, (who was both its attorney and the attorney for the firm of Wilson & Bayless,) Charles Noyes and W. S. Tillotson, who was the general book-keeper of the appellant in its bank. In the organization of the corporation, J. M. Wilson was made president; Bayless, vice-president; Halbe, secretary; Bayless, treasurer, and George Wilson, Jr., manager. On the 5th of October, after the organization of the company, Wilson & Bayless pledged to appellant two certificates of stock, of fifty-five shares each, issued to them, respectively, as further collateral securities for their account, the terms of the pledge being in writing.

On the 10th day of November, 1888, the bank held notes of Wilson & Bayless, falling due at various times in the future, aggregating $10,000. On that day Halbe, who was acting not only as secretary of the company, but also as book-keeper of the firm of Wilson & Bayless in winding up its affairs, visited the bank for the purpose of obtaining collaterals from the tin box for collection. While he was examining the same, the president of the bank, Grannis, happened to come into the room and noticed that some of the notes were past due and uncollected, and after a short conversation with Halbe, requested him to have Wilson & Bayless come to the bank at once, as he was dissatisfied with the security held. As a result, Wilson, Bayless and Warvelle came to the bank, and an in-

terview was had between them and Grannis and Tillotson of the bank, the result of which was, that an arrangement was made by which it was agreed that the directors of the corporation should pass a proper resolution, and that there should be given to the bank, in lieu of the box of collaterals and in consideration thereof, a judgment note of the corporation for the sum of $15,000, which should be held as collateral security for the liability of Wilson & Bayless then existing, and for such further sums as should be advanced by the bank.

At the regular meeting of the directors following the 10th of November, to-wit, on the 13th of November, 1888, a resolution was passed, which was prepared by Warvelle, who was the attorney for the corporation as well as a director, which provided for the purchase of the box of collaterals held by the Atlas National Bank for the sum of $15,000, and the giving of a note therefor, said note to contain a warrant of attorney to confess judgment at any time after the date thereof. This resolution, adopted at said directors' meeting, at which Wilson, Bayless, Warvelle, Halbe, Noyes and Tillotson were all present, recites that the bank held notes and mortgages of Wilson & Bayless aggregating the sum of $17,000; that the same are pledged to the bank by Wilson & Bayless to secure the bank for advances made to them. It also recites that the bank has offered to sell the same for $15,000 to the company, and that it was expedient, and for the best interest of the company, to accept the proposal. Accordingly, on the following day, the 14th of November, a judgment note for $15,000 was duly prepared, and executed under the seal of the corporation, by virtue of this resolution, and a copy of the resolution was made and certified by the secretary, and both were given to the attorney for the corporation, and that attorney, Warvelle, delivered the same to the bank, under the arrangement that had previously been made.

At the time of the delivery of the said $15,000 judgment note to appellant, the notes, mortgages and leases that had been executed by the customers of the firm of Wilson & Bayless, and by said firm pledged to the bank, were not delivered to Warvelle, nor were they in fact ever delivered to the Wilson & Bayless Company. They were afterwards, on or about the 5th of December, 1888, delivered to Halbe, not upon the order of the corporation, but upon a written order of the firm of Wilson & Bayless, which order was, in substance, as follows :

"CHICAGO, *Dec. 5, 1888.*

"*Mr. Grannis, Pres't Atlas Nat. Bank :*

"DEAR SIR—Please deliver to bearer, Chas. F. Halbe, all our notes and mortgages now at your vaults, and oblige.        Yours, respt.,    WILSON & BAYLESS."

Thereafter, Halbe succeeded in collecting $100 on these surrendered collaterals, and that $100 was placed to the credit of the firm of Wilson & Bayless.

From time to time after the 15th of November the nine notes, representing the $10,000 of the firm indebtedness to the bank, fell due and were replaced by the notes of the Wilson & Bayless Company, the transactions being substantially this : One of the firm, generally Wilson, would come into the bank with the check of the company for the amount of the firm note, pay it in, and immediately, as a part of the same transaction, discount a company note for a like amount, this being the method resorted to by the parties for the substitution of a company note for the firm indebtedness without the payment by the bank to the company of any consideration therefor.

On the 16th day of November, 1888, the firm of Wilson & Bayless made a note for $1500, and appellant discounted that note and placed the proceeds to the credit of the firm. Excluding the transactions by means of which notes of the Wilson & Bayless Company were substituted for notes of the firm of Wilson & Bayless, in one

instance only was any money loaned by appellant to the corporation organized as the Wilson & Bayless Company, and that was a loan of $1000, made on the 21st day of February, 1889.

On the 9th of March following such had been the transactions between the company and the bank that the bank then held its notes for $11,500, the net amount then due to it, and on that day the bank discovered that the company was swapping checks, and being alarmed thereby, caused judgment to be entered upon the judgment note for $15,000 in the Superior Court of Cook county. Shortly thereafter, its attorney, discovering, as appellant claims, that the judgment note so held was held as collateral security, and that the total amount of the indebtedness owing to the bank by the company was $11,500, entered a *remittitur* reducing the judgment to that amount. Execution was duly issued and levied upon the stock of the company on the 9th of March. Four days later, and on the 12th of March, the corporation made a voluntary assignment, the assignee in the deed of assignment being left blank and unnamed, but the trust was accepted by Marshall D. Talcott, who duly qualified as assignee thereunder. Talcott was afterwards succeeded by Clare E. More, the present assignee.

Talcott, as assignee, applied to the county court of Cook county for an order on the sheriff to turn over to him, as assignee, the property levied on under the execution and held by said sheriff, and on the 13th day of March, 1889, by agreement made in open court and entered of record by and between the assignee and the Wilson & Bayless Company, and Wilson and Bayless individually, and the Atlas National Bank of Chicago, and various creditors, it was ordered that the sheriff deliver and turn over to the assignee all the property levied on by the sheriff and in his possession under and by virtue of the execution in favor of the appellant bank and against the Wilson & Bayless Company, and said order

provided as follows: "That the rights of said sheriff, and of said judgment creditors under and by virtue of said judgments and the executions levied upon said property, if any exist, are hereby fully preserved to said sheriff and to said judgment creditors, subject to the further adjudication and determination of this court with respect to said rights and liens, if any exist; that said judgment creditors, and each of them, have in this court the same right to be paid out of said property, or the proceeds thereof, that they would have if said property was not turned over to said assignee; that neither of said creditors shall be considered as having waived any lien on said property, or any part thereof, or the proceeds thereof, and that the rights of all the parties be adjusted in this court on the basis of the legal and equitable standing of the parties existing before this order was made."

The assignee sold and disposed of the property of the insolvent corporation, and realized therefrom about $28,000. Thereupon the appellant bank petitioned the county court for an order on the assignee to pay the bank its judgment. The assignee filed an answer to this petition, and some seventy-six creditors of the insolvent corporation also filed answers, and they objected to the payment of the judgment of appellant, on the ground that the judgment note on which it was based was given for a debt of the firm of Wilson & Bayless, and not for the debt of the corporation, and that it was given without consideration, and was therefore void as against the claims of the creditors of the corporation, and that the execution created no lien upon the property levied upon, as against such creditors. The county court entered a decree allowing the claim of the appellant bank to the extent of $1106.60 only, said sum being for the $1000 loaned by the bank to the corporation on the 21st day of February, 1889, with interest thereon, and certain costs of suit in and about the entry of judgment, etc. On an appeal to the Appellate Court this decree was affirmed, and a further appeal brought the record here.

In the view that we take of the case it is necessary to consider two, and only two, questions. The first of these questions is jurisdictional. Did the county court, under the facts of the case, have full equity power and jurisdiction to hear and determine the controversy involved in the record? The contention of appellant is, that when it presented to the county court the record of its judgment recovered in the Superior Court of Cook county, and no want of jurisdiction was shown, such record imported absolute verity, and when followed by an execution, with due proof of a levy, the appellant had an absolute lien, which the county court was bound to protect and enforce, unless either it was void as a preference under the Voluntary Assignments statute, or some defense arising subsequently to the entry of judgment was shown, such as a vacation or removal of the judgment, or payment thereof, or the like. The claim, stated in other language, is, that the county court was neither a court of review nor a court of chancery, and had no right to go behind the judgment for any purpose.

The county court did not, and indeed could not, assume to review or reverse for error the judgment of the Superior Court. That which it did by its decree was to determine that the lien of the execution upon the property covered by the assignment and in the possession of the assignee, and subject to its order and supervision, was not a valid lien as against the creditors of the corporation that made the assignment, except as to the sum of $1106.60. In fact, the county court, in its decree, expressly recognized the continued existence of the judgment as a judgment, and to the extent above indicated protected and enforced the execution and levy based thereon. Suppose the case to be that the insolvent corporation, prior to the assignment, fraudulently conveyed some of its property to a third party. Then, in that event, there is nothing in the decree of the county court that would prevent appellant from suing out an *alias fi. fa.*,

and, upon its being returned *nulla bona,* filing a creditor's bill predicated upon the judgment of the Superior Court

It is true that the county courts of this State have no general chancery jurisdiction and powers, and also true that the Voluntary Assignments act confers no such jurisdiction and powers. (*Preston et al.* v. *Spaulding et al.* 120 Ill. 208; *Ide* v. *Sayer et al.* 129 id. 230.) But it is equally clear that by section 14 of the act full authority and jurisdiction are conferred upon county courts to execute and carry out the provisions of the act, and that in doing so they are clothed with both legal and equitable jurisdiction over the assigned estate, and may exercise both legal and equitable powers in relation thereto. *Field et al.* v. *Ridgely et al.* 116 Ill. 424; *Hanford Oil Co.* v. *First Nat. Bank,* 126 id. 584; *Ide* v. *Sayer, supra; Plume & Atwood Manf. Co.* v. *Caldwell,* 136 id. 163.

In the case at bar, by agreement of appellant and all parties in interest, an order was entered of record in the county court, by virtue of which the property upon which appellant's execution had been levied was surrendered to the assignee, and such order and surrender were expressly made subject to the further adjudication and determination of that court with respect to the rights and liens of appellant, if any such existed; and it was further stipulated in the order, by appellant and the other parties, that the rights of all the parties should be adjusted in said county court on the basis of the legal and equitable standing of the parties existing before the order was made. Moreover, appellant afterwards presented to said county court its petition, whereby it submitted to the consideration and decision of that court the matter of its legal and equitable rights in the premises. It is manifest that the county court had full and complete jurisdiction both of the subject matter and of the persons of appellant and the other parties in interest, and that, in administering upon the property and fund committed to its supervision, it had power and authority to adjudicate

and determine both the legal and the equitable rights of the respective parties in the controversy.

Another question demands our consideration. Is the lien of the execution issued on the judgment of the bank a valid lien upon the property of the insolvent corporation and the fund arising from the sale thereof, as against the claims and demands of the creditors of such corporation?

The Appellate Court, in its opinion in this case, said : "November 13, 1888, the corporation made to the bank its judgment note for $15,000. The real purpose of the note was to secure to the bank the debt the firm owed, and, vaguely, future advances to somebody, but as an ostensible consideration the bank sold to the corporation the paper in the box of the nominal amount of $17,000, on which the firm, not the corporation, afterwards collected about $100. It is not necessary to state at large the evidence that proves that this sale was a mere pretence, adopted in casting about for a consideration, as a cloak for the real purpose of the note."

In our opinion the evidence in the record fully justifies the language above quoted. At the time the note was made and delivered, the corporation was not, and never had been, indebted to the bank. The evidence shows that the notes, mortgages and leases that were in the tin box at that time were almost entirely worthless, and represented the accumulated losses of the firm of Wilson & Bayless during the whole time they had been engaged in the furniture business, and we are satisfied, from the evidence, that the president of the bank had knowledge of the substantial worthlessness of said securities at the time that he demanded of Wilson and of Warvelle that the corporation should execute its judgment note for $15,000, as collateral security for the debt due the bank from the firm. Warvelle stated at the time that he did not see how the company could give a note that would possess any validity, because the company was not indebted to

the bank, and thereupon it was agreed that the bank should turn over to the company the notes, mortgages and leases in the tin box as a consideration for the judgment note of $15,000 to be executed by the company. Warvelle says in his testimony: "Ostensibly, I presume, the company was to buy these notes and mortgages. I told Grannis that it would be necessary to have a directors' meeting before we could do anything, and the directors would have to authorize the execution of this note. So it was further agreed that we should have a meeting that night." And he further says : "The chattel mortgages were simply put in as a consideration for the note, —whether real or apparent I don't like to answer. I do not want to stultify myself in any way."

Both Wilson and Bayless were directors of the company, and both had a personal interest in being released from their personal liability for the $10,000 of indebtedness to the bank, and in having that debt imposed upon the corporation. Halbe was another director, and was also the book-keeper of the firm, and, as he testifies, was willing to do whatever Wilson and Bayless wanted him to do, regardless of any view that he might have of the right or wrong of so doing. Warvelle was their attorney and was also a director, and seems to have looked at matters very much as Halbe did. Tillotson, another director, was the general book-keeper of the bank, and appears to have been placed upon the board for the express purpose of furthering the desires and interests of appellant. And it follows, as a matter of course, that the arrangement made between the president of the bank and Wilson and Warvelle was immediately ratified by the board of directors.

But the real fact is, the collaterals in the tin box never were delivered to the corporation, and it never realized a single cent in money therefrom. As we have heretofore seen, said collaterals were delivered to the book-keeper and agent of the firm upon a written order signed

by the firm in its firm name. Said order asked for the delivery to the bearer of "all *our* notes and mortgages." The firm by giving the order, and the bank by accepting it and complying with its request, recognized the fact that said collaterals were still the property of the firm of Wilson & Bayless, and, as we have also seen, all the money that was afterwards collected upon them was placed to the credit of the firm, and not to the credit of the corporation. It is not to be wondered at that the Appellate Court arrived at the conclusion that the sale was a mere pretence, adopted in casting about for a consideration, as a cloak for the real purpose of the note. Indeed, that the supposed sale was a mere sham was virtually admitted by Grannis, the president of the appellant bank, when he testified at the hearing as follows: "This note (the $15,000 judgment note) was to be held as collateral security for the then existing debts of Wilson & Bayless, and any such money as the bank would let them have in the future." And that it was a mere sham was also clearly indicated by the conduct of the bank in first entering a judgment for $15,000 upon the note, and three days thereafter reducing said judgment to $11,500, —the exact amount of the then indebtedness of the firm of Wilson & Bayless to the bank, plus the $1000 loaned to the corporation itself.

Equity regards the property of a corporation as a fund held in trust for its stockholders while it is solvent, and in trust for the payment of its debts when it becomes insolvent; and if others than *bona fide* creditors of the corporation, or purchasers, possess themselves of it, then, in case the corporation is or becomes insolvent, they hold it charged with a trust in favor of its creditors, and such trust a court of equity will enforce against them. *National Trust Co.* v. *Miller*, 33 N. J. Eq. 155, and authorities there cited; *Bouton* v. *Dement et al.* 123 Ill. 142; *Beach* v. *Miller*, 130 id. 162.

It is provided in section 4 of the Statute of Frauds, that every bond or other evidence of debt given, suit commenced or decree or judgment suffered, with the intent to disturb, delay, hinder or defraud creditors, shall be void as against such creditors. Whenever a judgment or decree is procured through the fraud of either of the parties, or by collusion of both, for the purpose of defrauding some third person, he may escape from the injury thus attempted by showing, even in a collateral proceeding, the fraud or collusion by which the judgment or decree was obtained. (2 Freeman on Judgments, sec. 336; 1 Black on Judgments, sec. 293.) A judgment which is not founded on an actual debt or other legal liability, due or enforcible at the time of its entry, will not be upheld against the creditors of the judgment debtor. (*Palmer* v. *Martindell*, 43 N. J. Eq. 90; *Shelcross* v. *Deats*, 43 N. J. L. 177.) A third party whose rights are affected may prove that there was no debt due from the judgment debtor. (*Henderson, Terry & Co.* v. *Thornton*, 37 Miss. 448; *Bergman* v. *Hutcheson*, 60 id. 872.) A collusive judgment is open to attack whenever and wherever it may come in conflict with the rights or the interest of third persons; and fraud is not a thing that can stand, even when robed in a judgment. *Smith* v. *Cuyler*, 78 Ga. 654. See, also, *Freydendall* v. *Baldwin*, 103 Ill. 325.

It is urged that the transaction here under investigation cannot be questioned by the Wilson & Bayless Company, or its assignee, or its creditors, because the notes, mortgages and leases which were the consideration for the $15,000 judgment note are retained. It is a sufficient answer to this claim to say, that neither the corporation nor its assignee can well retain that which neither of them ever had in possession.

We find no error in the record. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*