## Theodore Podolski v. A. L. Stone, Assignee.

1. Preferences—*Obtained Through the Acts of the Debtor.*—Any preference obtained by the creditor, by or through the acts of the debtor, after the debtor has determined to yield dominion of his estate by making a general assignment for the benefit of creditors, is within the prohibition of the statute and void.

2. Voluntary Assignments—*What Acts Constitute.*—All the acts of the debtor, performed with the intent and for the purpose of effecting

Podolski v. Stone.

a disposition of all his property for the benefit of his creditors, are to be regarded as a single transaction, each constituting part of the general assignment of his assets under the statute.

3. Same—*What Acts of the Debtor Are Within the Statute.*—After a debtor has made up his mind to make an assignment of his property for the benefit of his creditors, all conveyances, transfers and other dispositions of his property or assets, made in view of his intended general assignment, whereby a preference is given, will be held to be within the prohibition of the statute and void, the same as though incorporated in the deed of assignment itself.

4. Witnesses—*When Interested, and Statements Are Inherently Improbable.*—The testimony of an interested witness to facts inherently improbable, need not be accepted by the court or jury, although such testimony is not contradicted by any other direct testimony in the case, and although the witness is not otherwise impeached.

5. Same—*How Contradicted.*—A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his accounts of particular transactions, or of his own conduct, as to discredit his whole story.

6. Presumptions—*Where the Hearing is Before the Court.*—Where the hearing is before the court, it will be presumed that the court, in reaching its conclusion, rejected all incompetent and only considered competent evidence before it.

**Petition for a Preference.**—Voluntary assignments. Appeal from the County Court of Cook County; the Hon. R. W. S. Wheatley, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 27, 1899.

John E. Kehoe and James R. Ward, attorneys for appellant.

A. Binswanger and Elmer E. Jackson, attorneys for the assignee.

Moses, Rosenthal & Kennedy, attorneys for Fred'k Vietor & Achelis et al., creditors.

Pam, Donnelly & Glennon, attorneys for Converse, Stanton & Co. et al.

Custer, Goddard & Griffin, attorneys for the Continental Nat. Bank.

Mr. Justice Windes delivered the opinion of the court.

Appellant in this case seeks a preference over the other creditors of S. Levy & Co., who made an assignment of all

their property for the benefit of their creditors to appellee, which assignment was dated May 31, 1898, was acknowledged and recorded the same day in the office of the recorder of deeds in Cook county at 1:39 P. M., and filed with the clerk of the County Court at 1:43 P. M. of the same day.

It appears that S. Levy and I. Birkenfield, partners composing the firm of S. Levy & Co., in January, 1898, and for some time prior thereto, had been engaged in the mercantile business at 240 Market street, Chicago; that on January 27, 1898, appellant loaned to S. Levy & Co. $3,500, and as evidence of such loan took the note of the firm for that amount, maturing four months after date and bearing interest at six per cent per annum; that on the date of the maturity of the note he called upon Levy & Co. for its payment, but they were unable to pay him, whereupon he asked that a judgment note be given him in its stead, which was done, the note being dated May 28, 1898, for the same amount as the original loan, but bearing interest at the rate of seven per cent per annum, and having a power of attorney thereto annexed, which gave power to confess judgment at any time after the date thereof; that May 29th and 30th, 1898, were Sunday and Decoration Day, respectively, and on May 31st following appellant caused to be entered a judgment by confession in the Circuit Court of Cook County, on which execution was issued immediately, and placed in the hands of the sheriff of Cook county at 10:16 A. M. of that day, with directions by appellant's attorney to the sheriff to levy the writ at once; that the sheriff's deputy proceeded to the place of business of Levy & Co. to make such levy, but when he arrived he found that the door of the store was closed and the property of Levy & Co. in the hands of the appellee, Stone, who was named as assignee in the deed of assignment; that Stone received a letter from S. Levy on the morning of the 31st of May, about half-past eight, requesting him, Stone, to call at 108 Fifth avenue; that he did so and arrived there fifteen or twenty minutes past nine o'clock, but did not find Levy; that he returned in about half an hour, when he found

Levy and Birkenfield, it then being near ten o'clock; that Levy told him that he was going to make an assignment, and asked him to act as assignee, to which he assented; that he, Stone, received the deed of assignment from Mr. Ward, the attorney of Levy & Co., about ten minutes before eleven o'clock, and went with him to the store of Levy & Co. at once and took possession of their stock in trade.

August 19, 1898, appellant filed his petition in the County Court setting up his judgment and asking that the assignee be directed to pay the same out of the moneys realized from a sale of the insolvent estate. Certain creditors of the insolvents, and also the assignee, answered the petition, claiming that there was no consideration for the note and warrant of attorney on which the judgment was confessed ; that the judgment was confessed at the instigation of the insolvents, and in contemplation of making an assignment, and that the judgment was confessed for the purpose of preferring appellant over the other creditors of the insolvents ; also that appellant, knowing that said insolvents were about to make an assignment for the benefit of their creditors, did, with a view of obtaining a preference over the other creditors, procure said note and warrant of attorney from them, and that the insolvents, in collusion with appellant, to enable him to secure such preference, made and delivered the note and warrant of attorney. and that the insolvents were then contemplating the making of said assignment, and that appellant, with like intent, caused said judgment to be confessed and the execution delivered to the sheriff.

The principal evidence on behalf of the assignee, and that upon which the judgment of the County Court must mainly depend, is that of appellant, which, it is claimed, is wholly insufficient to sustain the judgment of the County Court, which denied the petition of appellant and dismissed it for want of equity.

The insolvent, S. Levy, refused to testify on the hearing on any matter which would in any wise throw light on his transactions with appellant, upon the ground that his testimony might tend to criminate him.

One of the counsel now representing appellant prepared the deed of assignment, and also represented the assignee at the beginning of the proceedings in the County Court. He also represented appellant on the hearing of his petition in the County Court, and made objection to proper questions asked of the insolvent, Levy, while on the stand as to matters entirely relevant and material under the issues. He made one objection, at least, which could only be properly made by the witness himself, it relating to the possible crimination of the witness by his answer. The action of counsel made it apparent that he did not desire a full investigation.

It is unnecessary to set out in detail the evidence of appellant, and we will only refer to some of its salient points. He testified that at the time he took the judgment note in question, he did not know of the insolvency of Levy & Co., although he said that Levy told him that he was unable to pay the note maturing May 27th, and his bank was pressing him for money, and that Levy said to him on the same day that he was greatly in need of money, that the bank was pressing them, wouldn't renew their notes, and he wanted to sell his book accounts at a discount; that the next day after the judgment note was taken, according to his testimony, though the same day the note was dated, and probably the same day it was taken, Levy sold to appellant for cash about $5,700 worth of good accounts at seventy cents on the dollar; that he, appellant, knew nothing about the business of Levy & Co., and made no inquiries of any one on that subject; that he bought the accounts in question without ever having looked at the firm's books; that he also, on the same day he bought the accounts, procured from Levy & Co. another judgment note for $1,000, at the request of one Rosenthal, which he gave to the same attorney whom he employed to take the confession of judgment on this note; that the Rosenthal note, although taken on May 28th, was dated back as of the same date of two original notes evidencing the indebtedness of Levy & Co. to Rosenthal, and that he did not think it strange that Rosen-

thal wanted a judgment note; that he took Levy's state-
ment that the $5,700 of accounts of the firm which he
purchased and paid $4,000 for, were correct; that he
did not suspect that anything was wrong until he heard
some talk at a club on Sunday afternoon, May 29th, that
Levy had conveyed a piece of his property on the West
Side, though he did not know what this property was worth,
had no idea of its worth, and that nothing was said in the
conversation on that subject, but that this fact was the only
thing that changed his mind on the subject of the firm's
insolvency; that when he talked over with his attorney, as
he did, on May 30th, the matter of entering judgment
against Levy & Co., he did not know how much stock the
firm had on hand nor how much they owed, and that he
did not make any inquiries of them as to what they owed
at bank.

Counsel for appellant make divers contentions which we
deem it unnecessary to refer to specifically, inasmuch as in
our opinion the only question to be considered is, was the
County Court justified in finding, as it no doubt did find,
that appellant entered his judgment in contemplation of an
assignment by Levy & Co., and also that the firm gave the
judgment note in contemplation of the assignment, and
that appellant received it in anticipation of that event and
for the purpose of procuring a preference over other cred-
itors?

In Hanford Oil Co. v. First Nat. Bank, 126 Ill. 584–91,
the Supreme Court say:

"Notwithstanding the voluntary assignment act, a debtor,
though insolvent, may still secure, by mortgage or confes-
sion of judgment, or otherwise, a *bona fide* indebtedness, if
done in good faith, and not in contemplation of making an
assignment under said act. When, however, the debtor
enters upon a course of conduct having for its object the
disposition of all his estate for the benefit of his creditors,
and as part of the plan by which to effect that object exe-
cutes a general assignment, the distribution must be to his
creditors in proportion to the amount of their respective
claims. This question was before this court in a case of
very considerable importance, and there received full con-

sideration; and we then, with entire unanimity, announced the doctrine that any preference obtained by the creditor, by or through the acts of the debtor, after the debtor has determined to yield dominion of his estate by making a general assignment for the benefit of creditors, fell within the prohibition of the statute and was therefore void." (Citing Preston v. Spaulding, 120 Ill. 208.) "All the acts of the, debtor, performed with the intent and for the purpose of effecting a disposition of all his property for the benefit of his creditors, are to be regarded as a single transaction, each constituting part of the general assignment of his assets under the statute."

In Hide & Leather Nat. Bank v. Rehm, 126 Ill. 465, the court say on this subject, and speaking of the insolvent's acts:

" So long as he is clearly shown to have entered upon the disposition of his property for the benefit of his creditors at the time he made the judgment notes, the law will indulge in no refinements in order to fix the precise point of time at which he reached the determination to make a general assignment. All that was done will rather be viewed as parts of the same transaction, so as to make it immaterial whether the determination to make the assignment in fact preceded or followed the execution of the judgment notes. Since the decision of this court in Preston v. Spaulding, 120 Ill. 208, the law must be regarded as settled in this State that, after a debtor has made up his mind to make an assignment of his property for the benefit of his creditors, all conveyances, transfers and other dispositions of his property or assets, made in view of his intended general assignment, whereby a preference is given, will be held to be within the prohibition of the statute and void, the same as though incorporated in the deed of assignment itself."

It is contended for appellant that appellee is bound by his (appellant's) evidence, because the latter testified at the instance of appellee and the creditors, since no different state of facts and circumstances were shown than that to which appellant testified. This, no doubt, would be true if the matters and circumstances testified to by the witness were not of such a nature as to justify the court in inferring, upon a consideration of the whole facts and circumstances in evidence, that the truth was the exact opposite

to the testimony of the witness. The court, having heard the witness, was in much better position to pass upon his credibility, because it could observe the manner of the witness in testifying and his conduct on the witness stand. In Highley v. Am. Ex. Nat. Bank (p. 48, this volume), this court said:

" The testimony of an interested witness to facts inherently improbable need not be accepted by the court or jury, although such testimony is not contradicted by any other direct testimony in the case, and although the witness is not otherwise impeached." (See authorities there cited.)

In Quock Ting v. United States, 140 U. S. 417, the court, in speaking upon this subject, said:

"He (the witness) may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his accounts of particular transactions or of his own conduct, as to discredit his whole story."

To the same effect is Anderson v. Liljengren, 52 N. W. Repr. (Minn.) 219.

As to the matters of the insolvency of S. Levy & Co. when the judgment note was given, and appellant's knowledge thereof, and also as to Levy & Co. in giving, and appellant in receiving, the judgment note and entering judgment thereon, all being done in contemplation of and as part of the general assignment, we are of opinion that the judgment of the County Court is not manifestly against the evidence.

It was also claimed that the County Court had no jurisdiction in the matter. This is settled to the contrary by Atlas Nat. Bank v. Moore, 152 Ill. 528, and cases there cited.

It is also claimed that the County Court admitted improper evidence, and that this is a cause for reversal. Where the hearing is before the court, as in this case, it will be presumed that the court, in reaching its conclusion, rejected all incompetent and only considered the competent evidence before it. Hobart v. Hobart, 53 Ill. App. 133.

It is further contended that the creditors were improper parties in this proceeding. If that contention be tenable, which we do not decide, as it is unnecessary, we are unable

to perceive in what way the fact of their being parties could in any way prejudice appellant.

The judgment of the County Court is affirmed.