## Theron A. Powers et al., Appellants, v. Walter Phillips, Appellee.

## Theron A. Powers et al., Appellants, v. Crip Bogard et al., Appellees.

## Theron A. Powers et al., Appellants, v. Guy Simpson et al., Appellees.

1. CONTEMPT—*upon what decree cannot be predicated.* Contempt for the violation of a decree will not be adjudged if such decree was obtained by consent and by corrupt means.

2. FRAUD—*how may be established.* Fraud is rarely proved by direct evidence, but is proved by facts and circumstances which raise an inference of fraud.

Appeal from the Circuit Court of Mason county; the HON. HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1911. Affirmed. Opinion filed December 13, 1911.

LeFORGEE, VAIL & MILLER, C. W. GREENFIELD and I. R. BROWN, for appellants.

W. H. DIETERICH, for appellees.

MR. JUSTICE THOMPSON delivered the opinion of the court.

In February, 1910, a decree was entered in the circuit court of Mason county restraining certain defendants and their agents and servants, together with all parties having notice of the decree, from going upon certain

described lands for the purpose of hunting or fishing. Subsequently three petitions were filed each asking for a rule against the respondents therein to show cause why they should not be attached for contempt for violating the injunction. Writs of attachment were issued and the respondents answered the rule in each case by alleging that the injunction was obtained by fraud practiced on the court by the complainants and certain defendants named, Boyd, and the attorney for the defendants, and alleging that Crane Lake, the body of water upon which the injunction restrained parties from fishing and boating, is navigable and denying that the complainants were entitled to the injunction obtained by them. The cases were consolidated and the court after hearing the evidence entered an order discharging the rule. The petitioners appeal.

The record discloses that in March, 1909, the petitioners filed a bill in chancery in the circuit court of Mason county, praying for an injunction restraining certain parties from trespassing on certain lands, of about the extent of 1,500 acres, and the waters overlying part of said described lands. Three other bills in chancery of the same nature were filed by other complainants at the same time seeking to restrain the same defendants from trespassing on other lands in the same vicinity. These chancery suits were not consolidated but the same counsel acted for all the complainants, and the expenses of the litigation were paid by the complainants in proportion to the acreage claimed by each. The bills allege that the complainants are the holders and owners and in possession of the lands therein described; that said lands are in part covered with water of various depths ranging from the margin to fifteen or twenty feet, which waters connect with the Sangamon and Illinois rivers, together with certain lakes and sloughs which are not meandered; that said waters are stocked with fish; that wild fowl congregate in large numbers upon said lands and

waters; that said lands and waters are of no value for agricultural purposes but are of great value for fish and game preserves and that complainants have expended large sums of money in protecting and caring for said game; that the defendants, residents in that locality, persist in going upon said lands and waters of complainants for the express purpose of hunting and fishing thereon, after having been requested to keep off, and that the defendants state they intend to continue to so trespass on said lands and waters; that complainants have repeatedly caused certain of the defendants to be arrested and fined for said trespasses; that defendants insist they have the right to go upon said lands for the purpose of fishing and hunting, and that said defendants carry guns and rifles and shoot at random and are a menace to the lives of complainants; that some of the defendants with other parties are banded together as the "Hunter's and Fisherman's Protective Association;" that. the defendants are insolvent; that the damages so caused to complainants are irreparable and cannot be computed in money and that complainants are remediless except in a court of equity. The bill makes the Hunter's and Fisherman's Protective Association of Illinois and fifty-eight individuals, parties defendant, and prays an injunction restraining the defendants and such other parties as have notice of the injunction from going on said land for the purpose of fishing or hunting. Summons was served on forty-one of the defendants.

Thereafter many of the defendants met and selected a committee to secure counsel to defend against the suits. A subscription was taken up to employ counsel; W. F. Boyd, one of the defendants, subscribed $100 while the average subscription varied from $1 to $5. The total subscriptions amount to about $400. W. F. Boyd was one of the committee to employ counsel and he employed an attorney who filed answers for himself and thirty-two other defendants in each of the four

chancery suits. The causes were referred to the master to take the evidence, and it was taken and reported to the court. Upon the coming in of the master's reports the complainants dismissed the bills against all the defendants who answered except William Boyd, John Boyd, Henry Boyd, Orlando Butler, Jeff Butler, Brack Lane, William Harris, Henry Swan, Charles Powell, John Breeden and Thurman Breeden. The attorney for the defendants then withdrew the answers of all the remaining defendants except the Boyds, and the defendants whose answers had been withdrawn were defaulted.

Decrees were then entered by consent against the Boyds and against the defaulted defendants, finding among other things that complainants are the owners in fee simple or in possession by lease or otherwise of the real estate described in the bill; that said real estate was purchased or leased for the purpose of a game or fishing preserve, and that the waters overlying said lands are non-navigable and not meandered. The decrees perpetually enjoin and restrain the defendants, their agents and servants, together with all persons having actual notice of the issuance of the decrees, from going upon said lands.

Walter Phillips and Crip Bogard are the only respondents who were parties to the injunction suits. The bills were dismissed as to them "for want of equity." The remaining respondents were not parties to the bills in any way. The evidence taken on the contempt proceeding shows that W. F. Boyd, the most active defendant in the injunction suits, received about $300 from the subscription to employ counsel on behalf of the defendants to resist the granting of the injunctions; that he "handled the financial part for all the parties;" "that he collected money for the defense;" and that he employed the solicitor who did draw and file the answers for those who answered, and to whom he paid the money collected. One of the bills in chan-

cery was filed by John H. Wehner as complainant. Respondents, upon the hearing under the rule to show cause, called Wehner as a witness; thereupon counsel for petitioners admitted in open court "that in the original proceedings in which the aforementioned decrees were entered on behalf of the several complainants, the counsel fees of the solicitors for the several complainants in the said causes were assessed against the complainants in the said causes according to the acreage of the lands owned and controlled by the said several complainants in said causes, said lands being the lands which were the subject-matters of the said suits, against trespasses on which lands the injunctions in the said several suits had issued. Counsel for petitioners also admitted in open court that the complainants in the aforesaid causes paid to one L. A. Jarman, solicitor for the defendants, or some one of them in the said causes, the sum of $1,500 in settlement of the said causes with the defendants, John Boyd, William Boyd, and Henry Boyd, defendants in the said causes, which said sum of $1,500 was assessed against the said complainants in said causes on the acreage basis aforesaid."

The proof further shows that W. F. Boyd received secretly from the complainants as a part of the settlement the right to fish in at least most of the waters that were in controversy. The payment of the $1,500 was also treated as a secret and on the trial of this matter Wehner was instructed by his counsel not to answer questions concerning it. It was paid by complainants in these suits with the other complainants to buy up Boyd, who had retained counsel for all the defendants who filed answers. It is not claimed there was any authority given by the defendants to their counsel, except by the purchased defendant Boyd, to withdraw the answers or that the defendants whose answers were withdrawn had any notice of such action. After the agreement for the payment of the $1,500 to the

Boyds and the granting to W. F. Boyd of fishing rights, Boyd then wanted the injunctions against the other defendants as strong as possible so that he would not be interfered with by other defendants fishing. Petitioners secretly paid money to and made concessions to the principal defendant in the cases,—the defendant who in the bills of complaint they name as the most aggressive and persistent. They took decrees against him restraining him from hunting or fishing on the land and at the same time secretly gave him the right to fish. He did not buy the right to fish from the complainants, but they while apparently taking injunctions against him, conceded to him secretly what they were enjoining him from, and gave him and the other two Boyds $1,500 in addition to the right to W. F. Boyd to fish, yet neither the right of Boyd to fish nor the receipt by him and his brothers of any money is mentioned or in any way referred to in the decrees. No reason is suggested by petitioners why any concession was made to W. F. Boyd or payment made to the Boyds. W. F. Boyd gave the complainants nothing therefor, unless it was the withdrawal of the answers of the other defendants and consent decrees.

Fraud is rarely proved by direct evidence, but is proved by facts and circumstances which raise an inference of fraud. Swift v. Yanway, 153 Ill. 197. The facts and circumstances proved in the record show very clearly that petitioners did not venture to rely on the proof made by them in the injunction suits, but that they resorted to the fraudulent expedient of buying out the defendant entrusted with the management of the defense.

"Whenever a judgment or decree is procured through the fraud of the parties or by collusion or both for the purpose of defrauding some third person, he may escape from the injury thus attempted by showing even in a collateral proceeding the fraud or collusion by which the judgment or decree was obtained." 2 Free-

man on Judgments, 111-336; 1 Black on Judgments, sec. 293. "A collusive judgment is open to attack whenever and wherever it may come in conflict with the rights or interests of third persons; and fraud is not a thing that· can stand, even when robed in a judgment." Atlas Nat. Bank v. More, 152 Ill. 528; Elting v. First Nat. Bank, 173 Ill. 368; Bank of Danville v. Cunningham, 48 Fed. R. 510.

Two of the respondents, Walter Phillips and Crip Bogard, were defendants in the original injunction suits. The bills were dismissed as to them for want of equity. There is no reason why they should desire to question the decrees since they do not enjoin them any more than they enjoin complainants. The remaining respondents were not parties to the original bills. The injunction suit was a civil proceeding. No person not a party to those suits has the right to have them reviewed. None of the respondents are employes, agents, servants, or in any way in privity with any of the defendants. They are not co-conspirators, sympathizers or abettors of the defendants in the original bills. They are citizens having the common right that all citizens have in public waters of the state. They assert in their answers to the rule. that the waters, where the alleged trespasses were committed, were public navigable waters.

The proof shows that the decrees against the Boyds are consent decrees, corruptly and secretly bought by the payment of money and the concession to W. F. Boyd of rights of fishing, neither of which facts is ·mentioned in the decrees. Contempt proceedings cannot be sustained against respondents, not parties to the original suits, under decrees obtained in such a manner. Respondents may not by such decrees be foreclosed of their rights or required to respect them. The rule to show cause was properly discharged and the order is affirmed.

*Affirmed.*